**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

ARMANDO CABRERA-PEREZ,
*Defendant-Appellant*.

No. 13-50148

D.C. No.
3:11-cr-03248-BTM-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Barry T. Moskowitz, District Judge, Presiding

Argued and Submitted
March 6, 2014—Pasadena, California

Filed May 9, 2014

Before: Jay S. Bybee, Carlos T. Bea, and Sandra S. Ikuta,
Circuit Judges.

Opinion by Judge Bea

## SUMMARY[*]

### Criminal Law

The panel affirmed the district court's denial of a motion to dismiss an indictment charging attempted entry after deportation.

The panel held that the district court did not err in applying the modified categorical approach – based on the direct complaint, the plea agreement, and the transcript of the plea colloquy – to conclude that the defendant's conviction for aggravated assault, under Arizona Revised Statutes § 13-1203(A)(2) and § 13-1204(A)(2), constitutes a "crime of violence" under the Immigration and Nationality Act § 101(a)(43) and 18 U.S.C. § 16, and that the defendant therefore suffered no prejudice from the immigration judge's alleged failure to advise him of his potential eligibility for voluntary departure.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Knut S. Johnson, San Diego, California, for Defendant-Appellant.

Laura E. Duffy, United States Attorney, Bruce R. Castetter, Assistant United States Attorney, Chief, Appellate Section, Criminal Division, Jill L. Burkhardt (briefed), Assistant United States Attorney, and Kyle B. Martin (argued), Special Assistant United States Attorney, San Diego, California, for Plaintiff-Appellee.

**OPINION**

BEA, Circuit Judge:

This case requires us to determine whether the crime of aggravated assault, under Arizona Revised Statutes ("A.R.S.") § 13-1203(A)(2) and § 13-1204(A)(2), constitutes a "crime of violence" under the Immigration and Nationality Act ("I.N.A.") § 101(a)(43)(F) and 18 U.S.C. § 16, such that an individual convicted under those Arizona statutes would be ineligible for voluntary departure under 8 C.F.R. § 1240.26(b)(1)(i)(E). Applying the modified categorical approach, we hold that Defendant-Appellant Armando Cabrera-Perez's conviction for aggravated assault under A.R.S. § 13-1203(A)(2) and § 13-1204(A)(2) constitutes such a "crime of violence." As a result, Cabrera-Perez was not eligible for voluntary departure at his February 9, 2005 immigration hearing. Accordingly, Cabrera-Perez's attempt to attack collaterally the deportation order underlying his

illegal reentry conviction because he was not adequately advised of the voluntary departure remedy fails.[1]

## Background

In 2004, Cabrera-Perez was charged by the state of Arizona's direct complaint with aggravated assault under A.R.S. § 13-1203 and § 13-1204. Count 3 stated:

> Armando Cabrera Perez . . . , on or about the 26th day of October, 2003, using a handgun, a deadly weapon or dangerous instrument, intentionally placed [his victim] in reasonable apprehension of imminent physical injury, in violation of [A.R.S] § 13-1203, 13-1204 . . . .

Count 4 stated the same but named a different victim. On April 2, 2004, Cabrera-Perez executed a plea agreement in which he "agree[d] to plead guilty to: Counts 3 and 4" of the direct complaint. Two days later, at his change of plea hearing, the state trial court confirmed that Cabrera-Perez intended to plead guilty to Counts 3 and 4, as described in the plea agreement. As to the factual basis for the plea, Cabrera-Perez's attorney stated:

> On October 26th, 2003 . . . [Cabrera-Perez] had a gun and he fired the weapon in the general vicinity of [the two victims], and they were, in fact, afraid for their safety.

---

[1] We address other issues raised in this appeal in a concurrently filed memorandum disposition.

The court accepted Cabrera-Perez's guilty plea "to the charges as set forth in the plea agreement" and sentenced him to twelve months' incarceration and four years of probation. On May 4, 2004, the court suspended the execution of the sentence and placed Cabrera-Perez on probation for four years.

On January 26, 2005, the Immigration and Naturalization Service issued Cabrera-Perez a Notice to Appear, which notice charged that Cabrera-Perez was subject to removal as "an alien present in the United States without being admitted or paroled," I.N.A. § 212(a)(6)(A)(i), and as an "alien who has been convicted of . . . a crime involving moral turpitude," I.N.A. § 212(a)(2)(A)(i)(I). On February 9, 2005, Cabrera-Perez appeared at his immigration hearing. When the Immigration Judge ("IJ") addressed Cabrera-Perez individually, Cabrera-Perez admitted that he had entered the U.S. illegally in November 2003 and that he was convicted in 2004 for aggravated assault. Cabrera-Perez agreed that both of these admissions were "correct reasons [for him] to be removed from the United States." The IJ then stated:

> Based on your testimony and review of the statute I find that each of the separate components of the aggravated assault statute to be a crime involving moral turpitude. Based on the felony designation I find you are subject to be removed. What country do you want to be deported to?

Cabrera-Perez responded, "Mexico."

The IJ confirmed that Cabrera-Perez had "seven dollars for voluntary departure," and then asked, "Do you want your

case postponed for voluntary departure or do you want the case ended today?" Cabrera-Perez responded, "End it today." The IJ then stated, "You are not eligible to be in the United States based on the facts of your case, voluntary return was explained in your presence. . . . It is ordered that you are to leave the United States to Mexico . . . ." Cabrera-Perez stated that he understood this decision and that he waived his right to file an appeal. The IJ signed an order which stated that Cabrera-Perez "was ordered removed from the United States to Mexico." That same day, Cabrera-Perez was deported to Mexico.

On May 8, 2011, Cabrera-Perez attempted to reenter the United States at the San Ysidro Port of Entry. Cabrera-Perez presented a photocopy of a birth certificate and a California identification card, both bearing the name of another individual, to the Customs and Border Protection ("CBP") Officer. The CBP officer noted that Cabrera-Perez did not appear to be the person in the photograph on the identification card, and escorted Cabrera-Perez to the Port Enforcement Team inspection area, where another officer took Cabrera-Perez's fingerprint and determined his true identity.

On July 27, 2011, the government indicted Cabrera-Perez on a single count of attempted entry after deportation pursuant to 8 U.S.C. § 1326(a) and (b). The government filed a superseding indictment on August 3, 2011, adding one count of aggravated identity theft under 18 U.S.C. § 1028A. Two days later, Cabrera-Perez pleaded not guilty.

On September 12, 2011, Cabrera-Perez filed a motion to dismiss the superseding indictment, claiming that the underlying removal order was invalid because the IJ failed to adequately advise him of his eligibility for voluntary

departure during the removal proceedings in 2005.[2]   The district court agreed with the government that Cabrera-Perez "suffered no prejudice from the IJ's alleged failure to advise [Cabrera-Perez] of his eligibility for voluntary departure because [Cabrera-Perez's] prior Arizona felony convictions [for aggravated assault under A.R.S. § 13-1203 and § 13-1204] rendered him ineligible for such relief," as those convictions constituted "crime[s] of violence" within the meaning of I.N.A. § 101(a)(43)(F) and 18 U.S.C. § 16.  As a result, the district court denied Cabrera-Perez's motion to dismiss the superseding indictment.

After a four day trial, on December 2, 2011, the jury returned guilty verdicts on both the illegal reentry count and the identity theft count.  On March 18, 2013, the district court held a sentencing hearing.  The district court granted Cabrera-Perez a downward variance of 40 months from the low end of the Sentencing Guidelines range, resulting in a 70 month sentence on the illegal reentry count.  In addition, the district court sentenced Cabrera-Perez to a consecutive 24 months for the identity theft count, resulting in a total sentence of 94 months, to be followed by three years of supervised release.

**Standard of Review**

This Court reviews *de novo* the denial of a motion to dismiss an 8 U.S.C. § 1326 indictment when the motion to

---

[2] Cabrera-Perez also argued that the substance of the removal proceedings established that he was in fact voluntarily departed, rather than removed from the U.S. in 2005.  The district court rejected this argument "[g]iven the undisputed existence of a signed removal order." The jury also determined that "the government ha[d] proved beyond a reasonable doubt that [Cabrera-Perez] was deported and removed from the United States on February 9, 2005."

dismiss is based on alleged due process defects in the underlying deportation proceeding. *United States v. Ramos*, 623 F.3d 672, 679–80 (9th Cir. 2010).

## Analysis

A defendant charged with illegal reentry in violation of 8 U.S.C. § 1326 may collaterally attack his underlying deportation order if the defendant demonstrates that: "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d). "Fundamental unfairness" requires (1) a due process violation in removal proceedings and (2) prejudice as a result of the due process violation. *United States v. Moriel-Luna*, 585 F.3d 1191, 1196 (9th Cir. 2009). Before his trial, Cabrera-Perez sought to attack collaterally his underlying deportation order by filing a motion to dismiss the superseding indictment, claiming that the underlying removal order was invalid because the IJ failed to adequately advise him of his eligibility for voluntary departure during the removal proceedings in 2005. In its order denying Cabrera-Perez's motion, the district court concluded that "even if the IJ failed to advise [Cabrera-Perez] of his right to voluntary removal, there was no prejudice" because Cabrera-Perez "committed a 'crime of violence' within the meaning of Section 101(a)(43)(F) of the I.N.A. and [was therefore] ineligible for voluntary removal." On appeal, Cabrera-Perez argues that the district court erred in its conclusion that his prior conviction for aggravated assault from 2004 constituted a "crime of violence."

8 C.F.R. § 1240.26(b)(1)(i)(E) provides that "[a]n alien may be granted voluntary departure by an immigration judge . . . only if the alien . . . [h]as not been convicted of a crime described in [I.N.A.] section 101(a)(43) . . . ." Section 101(a)(43) includes "crime[s] of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment [is] at least one year." I.N.A. § 101(a)(43)(F). In turn, 18 U.S.C. § 16 defines a "crime of violence" as:

> (a) an offense that has an element of the use, attempted use, or threatened use of physical force against the person or property of another, or

> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

The statute under which Cabrera-Perez was convicted, A.R.S. § 13-1203, provides:

> A. A person commits assault by:

> 1. Intentionally, knowingly or recklessly causing any physical injury to another person; or

> 2. Intentionally placing another person in reasonable apprehension of imminent physical injury; or

3. Knowingly touching another person with the intent to injure, insult or provoke such person.

A.R.S. § 13-1204(A) provides that a "person commits aggravated assault if the person commits assault as prescribed by § 13-1203 under any of the following circumstances: . . . (2) If the person uses a deadly weapon or dangerous instrument."

In determining whether Cabrera-Perez's conviction under A.R.S. § 13-1203 and § 13-1204 constituted a "crime of violence," the district court correctly employed the two-part analysis applicable to "divisible statutes," as described by the Supreme Court in *Descamps v. United States*, 133 S. Ct. 2276 (2013).**[3]** First, the district court determined that under the categorical approach, "A.R.S. § 13-1203 in its entirety is not categorically a 'crime of violence' because subpart (A)(1) can be violated with a mens rea of 'recklessness,' and a 'crime of violence' under 18 U.S.C. § 16 requires a mens rea of at least extreme recklessnesss." *See Fernandez-Ruiz v. Gonzalez*, 466 F.3d 1121, 1130 (9th Cir. 2006) ("[N]either recklessness nor gross negligence is a sufficient mens rea to establish that a conviction is for a crime of violence under [18 U.S.C.] § 16."). Both parties agree with the district court's conclusion in this respect.

Second, the district court applied the modified categorical approach, under which courts "consult a limited class of

---

**[3]** A "divisible statute . . . sets out one or more elements of the offense in the alternative." *Descamps*, 133 S. Ct. at 2281 (internal quotation marks omitted).

documents[4] . . . to determine which alternative [element] formed the basis of the defendant's prior conviction." *Descamps*, 133 S. Ct. at 2281. "The court can then . . . compare the elements of the crime of conviction (including the alternative element used in the case) with the elements of the generic crime." *Id.* Both parties agree that the district court was correct to apply the modified categorical approach. The parties, however, disagree about the validity of the district court's conclusion that under the modified categorical approach Cabrera-Perez's crimes of conviction constituted "crimes of violence."

In reaching this conclusion, the district court considered three documents. First, the district court looked at the direct complaint which charged Cabrera-Perez with aggravated assault. Counts 3 and 4 of the direct complaint both stated:

> Armando Cabrera Perez . . . using a handgun, a deadly weapon or dangerous instrument, intentionally placed [the victim] in reasonable apprehension of imminent physical injury, in violation of [A.R.S.] § 13-1203, 13-1204 . . . .

The district court noted that Counts 3 and 4 "track the language" of § 13-1203(A)(2) ("[i]ntentionally placing another person in reasonable apprehension of imminent physical injury") and § 13-1204(A)(2) (use of "a deadly weapon or other dangerous instrument"). Second, the district court looked at Cabrera-Perez's plea agreement, in which he

---

[4] These documents include "the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which [the defendant] assented." *United States v. Vidal*, 504 F.3d 1072, 1086 (9th Cir. 2007).

agreed to plead guilty to Counts 3 and 4 from the direct complaint. Third, the district court looked at the change of plea colloquy at which Cabrera-Perez pleaded guilty to Counts 3 and 4, and Cabrera-Perez's attorney adopted the factual basis for the plea.

Based on this record of conviction, the district court determined that Cabrera-Perez was convicted under subpart (A)(2) of A.R.S. § 13-1203 and subpart (A)(2) of A.R.S. § 13-1204. Finally, the district court concluded that Cabrera-Perez committed a "crime of violence" because "the Ninth Circuit has held that convictions under subpart (A)(2) of § 13-1203 and subpart (A)(2) of § 13-1204 satisfy both alternative prongs of the test for a 'crime of violence' under 18 U.S.C. § 16." *See United States v. Ceron-Sanchez*, 222 F.3d 1169, 1172–73 (9th Cir. 2000), overruled on other grounds by *Fernandez-Ruiz*, 466 F.3d at 1125 n.6.

On appeal, Cabrera-Perez first claims that the record of conviction does not indicate that he was convicted under subpart (A)(2) of § 13-1203 and subpart (A)(2) of § 13-1204. He argues that the plea agreement did not state under which subpart of these statutes he agreed to plead guilty. However, as the district court correctly noted, Counts 3 and 4 of the direct complaint track the language of subpart (A)(2) of § 13-1203 and subpart (A)(2) of § 13-1204 word-for-word. Moreover, in his plea agreement, Cabrera-Perez agreed to plead guilty to Counts 3 and 4 in the direct complaint.[5]

---

[5] The plea agreement stated only that Cabrera-Perez agreed to plead guilty to "Counts 3 and 4." The plea agreement did not explicitly reference the direct complaint. However, Cabrera-Perez does not argue on appeal that the reference to "Counts 3 and 4" in the plea agreement was a reference to charges other than in the direct complaint.

Therefore, applying the modified categorical approach, we conclude that Cabrera-Perez was convicted under subpart (A)(2) of A.R.S. § 13-1203 and subpart (A)(2) of A.R.S. § 13-1204.**6**

Second, Cabrera-Perez asserts that "this Circuit [has] repeatedly held that charging documents [such as the direct complaint here] are insufficient alone to prove the facts to which [a defendant] [has] admitted." (third alteration in original) (internal quotation marks omitted). However, in *United States v. Vidal*, cited by Cabrera-Perez, the court rejected the use of Vidal's charging documents to prove the facts to which he admitted because the record did not contain "a transcript of Vidal's change of plea hearing or any record[] of the terms of his plea bargain." 504 F.3d 1072, 1089 (9th Cir. 2007). By contrast, here, we have: (1) the direct complaint, (2) the plea agreement, and (3) the transcript of the change of plea colloquy. And, as the government argues, "each step in [Cabrera-Perez's] process of conviction refer[red] back to Counts 3 and 4 of the [direct complaint], which [counts] by their charging language allege" that Cabrera-Perez "intentionally placed [his victims] in

---

**6** Cabrera-Perez also argues that "[t]he change of plea colloquy was completely devoid of evidence [that] Mr. Cabrera-Perez[] admitted that he *intended* to cause fear in others when he fired a weapon in the general vicinity of his neighbors." (emphasis added). Cabrera-Perez suggests that the district court therefore should not have concluded that he was convicted under § 13-1203(A)(2), which requires intentional action. While Cabrera-Perez is correct that the factual basis adopted by his counsel at the change of plea colloquy was "devoid of evidence" regarding Cabrera-Perez's intent, Counts 3 and 4 of the direct complaint, to which Cabrera-Perez agreed to plead guilty, stated that Cabrera-Perez "*intentionally* placed [his victims] in reasonable apprehension of imminent physical injury." Therefore, this argument fails.

reasonable apprehension of imminent physical injury." Therefore, because the complaint is "'a charging document that narrows the charge to generic limits,' the fact that [Cabrera-Perez] pleaded guilty to th[ese] charge[s] establishes that he was convicted of [the generic offense]." *United States v. Rivera*, 658 F.3d 1073, 1078 (9th Cir. 2011) (citation omitted).

Finally, Cabrera-Perez takes issue with the district court's reliance on *Ceron-Sanchez* for the proposition that "convictions under subpart (A)(2) of § 13-1203 and subpart (A)(2) of § 13-1204 satisfy both alternative prongs of the test for a 'crime of violence' under 18 U.S.C. § 16." In *Ceron-Sanchez*,[7] the Ninth Circuit considered whether a conviction under A.R.S. § 13-1203(A) and § 13-1204(A)(2) constituted a "crime of violence" under 18 U.S.C. § 16.  222 F.3d at

---

[7] Ceron-Sanchez pleaded guilty to attempted aggravated assault with a deadly weapon in violation of A.R.S. § 13-1204(A)(2).  After Ceron-Sanchez was released from prison, he was deported.  Ceron-Sanchez returned to the United States, was arrested, and was charged with illegal reentry under 8 U.S.C. § 1326.  He pleaded guilty, and, at sentencing, the district court "increased Ceron-Sanchez's offense level by 16 under U.S.S.G. § 2L1.2(b)(1)(A) which applies if the defendant previously was deported after a criminal conviction for an aggravated felony," as defined in I.N.A. § 101(a)(43).  222 F.3d at 1171.  Under subsection (F) of I.N.A § 101(a)(43)—the same provision at issue in the instant case—the term "aggravated felony" includes a "crime of violence" as defined by 18 U.S.C. § 16.  On appeal, Ceron-Sanchez argued that his attempted aggravated assault conviction did not constitute a "crime of violence" because that conviction "was based on reckless conduct and, therefore, [did] not constitute a crime of violence for aggravated felony purposes." *Id.* at 1172.  Applying the categorical approach, the Ninth Circuit affirmed the district court, concluding that "Ceron-Sanchez's statute of conviction reaches only conduct that would constitute a crime of violence." *Id.* at 1173.

1172.  The court concluded that each of A.R.S. §§ 13-1203(A)(1), (A)(2), and (A)(3)

> requires either the use, attempted use, or threatened use of force against the person of another, and by incorporation, a conviction under [A.R.S.] § 13-1204(A)(2) meets the definition of crime of violence set out in 18 U.S.C. § 16(a).

*Id.* at 1173.**[8]**

Cabrera-Perez argues that *Ceron-Sanchez* does not support the proposition that A.R.S. § 13-1203(A)(2) and § 13-1204(A)(2) constitute "crimes of violence" in light of our more recent en banc opinion in *Fernandez-Ruiz.*  However, while the en banc court in *Fernandez-Ruiz* did overrule *Ceron-Sanchez*, "the specific focus of [the analysis in *Fernandez-Ruiz* was] whether the offense defined in [A.R.S.] § 13-1203(A)(1) [as opposed to § 13-1203(A)(2)] [was] a crime of violence under 18 U.S.C. § 16(a)."  466 F.3d at 1125.  Indeed, the *Fernandez-Ruiz* court stated that "because we ultimately conclude that not all of the conduct proscribed by [A.R.S.] § 13-1203(A)(1) meets the definition of a crime of violence, we do not consider [A.R.S.] § 13-1203(A)(2)." *Id.* at 1125 n.6.

---

**[8]** The court also concluded that a "conviction under [A.R.S.] § 13-1204(A)(2) [] satisfies the alternative definition of a crime of violence set out in 18 U.S.C. § 16(b)," which covers felony convictions which by their nature "involve[] a substantial risk that physical force . . . may be used against the person or property of another." *Id.* (third alteration in original) (internal quotation marks omitted).

As a result, the reasoning applied by the *Ceron-Sanchez* court to conclude that a violation of A.R.S. § 13-1203(A)(2) constitutes a "crime of violence" is still valid. In particular, A.R.S. § 13-1203(A)(2) satisfies the first prong of 18 U.S.C. § 16 because "[i]ntentionally placing another person in reasonable apprehension of imminent physical injury," A.R.S. § 13-1203(A)(2), has as an element "the use, attempted use, or threatened use of physical force against the person or property of another," 18 U.S.C. § 16(a). Unlike in *Fernandez-Ruiz*, where the court determined that not all conduct proscribed by A.R.S. § 13-1203(A)(1) constituted a "crime of violence" under 18 U.S.C. § 16(a) because subsection (A)(1) included "reckless" conduct, subsection (A)(2) proscribes only intentional conduct. 466 F.3d 1132. We therefore hold that convictions under A.R.S. § 13-1203(A)(2), and convictions under A.R.S. § 13-1204(A)(2) which incorporate A.R.S. § 13-1203(A)(2), constitute "crimes of violence" under 18 U.S.C. § 16.

Ultimately, the district court did not err in applying the modified categorical approach to conclude that Cabrera-Perez's crimes of conviction constituted "crimes of violence" under 18 U.S.C. § 16, such that Cabrera-Perez suffered no prejudice from the IJ's alleged failure to advise Cabrera-Perez of his potential eligibility for voluntary departure. We therefore affirm the district court in this respect.

## Conclusion

For the foregoing reasons, we **AFFIRM** the district court's denial of Cabrera-Perez's motion to dismiss the indictment.