**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

MERLIN MARCIA-ACOSTA, AKA
Marcos Ramos Garcia,
*Defendant Appellant*.

No. 13-10475

D.C. No.
2:12-cr-00318-
JAT-1

OPINION

Appeal from the United States District Court
for the District of Arizona
James A. Teilborg, Senior District Judge, Presiding

Argued and Submitted
September 12, 2014—San Francisco, California

Filed March 23, 2015

Before: Raymond C. Fisher, Marsha S. Berzon,
and Morgan Christen, Circuit Judges.

Opinion by Judge Berzon

## SUMMARY[*]

### Criminal Law

The panel vacated a sentence imposed upon a defendant convicted of unlawful reentry into the United States, and remanded for resentencing, in a case in which the district court determined, using the modified categorical approach, that the defendant's prior state conviction for aggravated assault, in violation of Arizona Revised Statutes §§ 13-1203 and 13-1204, was a "crime of violence" under U.S.S.G. § 2L1.2.

The panel held that the district court's application of the modified categorical approach contravened the principles underlying *Descamps v. United States* because the district court, in concluding that the defendant had pled to the generic elements of aggravated assault, relied solely upon a statement by defense counsel, during the state court plea colloquy, concerning the factual basis for the defendant's plea.

The panel emphasized that courts remain restricted to the modified categorical approach's focus on the elements, rather than the facts, of a crime. The panel wrote that in a case like this one – in which there is no narrowing through the indictment, information, or other charging document, and no narrowing of the offense of conviction through the actual conviction documents or pleas – a sentencing court may not rely on an extraneous factual-basis statement detail, standing alone, to supply the narrowing for purposes of the modified

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

categorical approach.  The panel could say for sure only that the *Shepard* documents do not prove that the defendant was convicted of the crime of intentional (or knowing) aggravated assault, and so the modified categorical approach is not satisfied.

## COUNSEL

Diego Rodriguez (argued), Rodriguez Law Office PLLC, Phoenix Arizona, for Defendant-Appellant.

Lacy Cooper (argued), Assistant United States Attorney, John S. Leonardo, United States Attorney, and Mark S. Kokanovich, Deputy Appellate Chief, United States Attorney's Office, Phoenix, Arizona, for Plaintiff-Appellee.

## OPINION

BERZON, Circuit Judge:

Merlin Marcia-Acosta was found guilty under 8 U.S.C. § 1326 of unlawful reentry into the United States.  Sentences for that offense are governed by United States Sentencing Guideline § 2L1.2.  The district court determined, using the modified categorical approach, that Marcia-Acosta's prior state conviction for aggravated assault, in violation of Arizona Revised Statutes §§ 13-1203 and 13-1204, was a "crime of violence" under that Guideline.  *See Taylor v. United States*, 495 U.S. 575, 602 (1990).  In so determining, it relied upon a single statement by Marcia-Acosta's defense attorney, during the state court plea colloquy, concerning the factual basis for Marcia-Acosta's plea.  The district court then

applied the § 2L1.2(b)(1)(A)(ii) 16-level sentencing enhancement and imposed a sentence of 77 months in prison.

We hold that the district court's application of the modified categorical approach contravened the principles underlying *Descamps v. United States*, 133 S. Ct. 2276 (2013), and so vacate Marcia-Acosta's sentence.

I.

Marcia-Acosta is a citizen of Honduras. He unlawfully entered the United States for the first time in 1991. He had fled El Salvador, where he was living at the time, because of that country's civil war. In 2001, Marcia-Acosta sought asylum. His application was denied in 2002.

Marcia-Acosta was indicted in late 2006 for "intentionally, knowingly or recklessly caus[ing] a physical injury" to another "using a metal bar, a deadly weapon or dangerous instrument," in violation of Arizona's aggravated assault statute, Ariz. Rev. Stat. §§ 13-1203 and 13-1204. Marcia-Acosta pled guilty to the assault; his plea agreement and change of plea order referred to "A.R.S. §§ 13-1203, [and] 13-1204," but did not specify the subsection of § 13-1203 to which he pled.[1] During the change of plea hearing, Marcia-Acosta confirmed that he voluntarily pled guilty to what the state court judge described as "agg assault, a class 3 felony." The court then had the following exchange with Marcia-Acosta's trial counsel, Jose Colon:

---

[1] Arizona's aggravated assault statute, Ariz. Rev. Stat. § 13-1204, cross-references Arizona's simple assault statute, *id.* § 13-1203, and sets forth aggravating circumstances. *See* p. 8, *infra*.

THE COURT:  Mr. Colon, any factual basis?

MR. COLON:  Your Honor, back on December 8th, 2006, at 400 South 9th Avenue — it was in Phoenix, Arizona, Maricopa County — [Marcia-Acosta] got into an altercation with the victim.  At this point he grabbed a metal bar.  He hit the victim on the head, and he caused an injury to the victim's skull.  And he did that intentionally.

THE COURT:  Any additions or corrections for the record?

[PROSECUTOR]:  No, Your Honor.

THE COURT:  The Court finds the defendant's plea is knowingly, intelligently, and voluntarily made.  There is a factual basis for it.  Please accept it entered of record.

Marcia-Acosta was sentenced to two-and-a-half years in prison.  After serving half his sentence he was deported, in April 2008.

Marcia-Acosta reentered the country the following year. An immigration official later encountered Marcia-Acosta and learned that he had recently entered the country without permission.  Marcia-Acosta was then taken into federal custody, and indicted for illegal reentry after deportation, in violation of 8 U.S.C. § 1326(a) and (b)(1).  Following a two-day jury trial, Marcia-Acosta was found guilty.

The initial Presentence Investigation Report ("PSR") proposed a four-level sentencing enhancement for Marcia-Acosta's prior aggravated assault conviction. The prosecution filed an objection to the PSR, arguing that the 2007 conviction was for a "crime of violence." Accordingly, the prosecution argued, Marcia-Acosta should have been given a 16-level enhancement under Section 2L1.2(b)(1)(A)(ii) of the Federal Sentencing Guidelines.[2] In support of its objection, the prosecution argued that the transcript of the plea colloquy — in particular, Colon's statement that Marcia-Acosta hit the victim on the head "intentionally" — established that his 2007 conviction qualified as a crime of violence, because it corresponded to the "generic" definition of aggravated assault.

The probation department subsequently amended Marcia-Acosta's final PSR to include a 16-level sentencing enhancement, relying upon the change of plea transcript provided by the government. In light of this enhancement and Marcia-Acosta's prior criminal history, the final PSR calculated Marcia-Acosta's Guidelines range as 77 to 96 months, and recommended a sentence of 77 months. Marcia-Acosta objected to the final PSR.

In his sentencing hearing, Marcia-Acosta reiterated his objection to the enhancement, but the district court rejected it, finding that the 2007 change of plea transcript made "clear" that Marcia-Acosta's prior aggravated assault

---

[2] Section 2L1.2(b)(1) provides: "If the defendant previously was deported, or unlawfully remained in the United States, after . . . (A) a conviction for a felony that is . . . (ii) a crime of violence . . . increase by 16 levels if the conviction receives criminal history points under Chapter Four . . . ."

"satisfies the generic definition," and thus "justifie[d]" the 16-level sentencing enhancement. The district court adopted the PSR's Guidelines calculation and imposed a sentence of 77 months in prison. Marcia-Acosta timely appealed.

II.

We review *de novo* a district court's determination that a prior conviction constitutes a "crime of violence" under the Federal Sentencing Guidelines. *See United States v. Quintero-Junco*, 754 F.3d 746, 749 (9th Cir. 2014) (citing *United States v. Gonzalez–Monterroso*, 745 F.3d 1237, 1243 (9th Cir. 2014)).

The Federal Sentencing Guidelines generally apply a 16-level sentencing enhancement to a defendant convicted under 8 U.S.C. § 1326 when that "defendant previously was deported" after a conviction for a "crime of violence." U.S.S.G. § 2L1.2(b)(1)(A)(ii). The definition of "crime of violence" includes the crime of "aggravated assault" under state law. *See* U.S.S.G. § 2L1.2, cmt. n.1(B)(iii). We use the categorical approach set forth in *Taylor v. United States*, 495 U.S. at 602, to determine whether a defendant's prior conviction constitutes a "crime of violence" for the purposes of U.S.S.G. § 2L1.2(b)(1)(A). *See United States v. Marquez-Lobos*, 697 F.3d 759, 762 (9th Cir. 2012). When the statute of conviction "'sweeps more broadly than the generic crime, a conviction under that law cannot [categorically] count as [a qualifying] predicate, even if the defendant actually committed the offense in its generic form.'" *United States v. Acosta-Chavez*, 727 F.3d 903, 907 (9th Cir. 2013) (alterations in original) (quoting *Descamps*, 133 S. Ct. at 2283). "In a narrow range of cases, however, sentencing courts may instead apply the modified categorical

approach . . . to determine whether the defendant's conviction necessarily involved facts corresponding to the generic federal offense." *Quintero-Junco*, 754 F.3d at 751 (internal quotation marks omitted).

Under Arizona law, an individual commits assault by:

> 1. Intentionally, knowingly or recklessly causing any physical injury to another person; or
>
> 2. Intentionally placing another person in reasonable apprehension of imminent physical injury; or
>
> 3. Knowingly touching another person with the intent to injure, insult or provoke such person.

Ariz. Rev. Stat. § 13-1203(A). An assault qualifies as felony "aggravated assault" if it was committed under any of the aggravating circumstances described in § 13-1204(A). At the time of Marcia-Acosta's conviction, such aggravating circumstances included, among others, "[i]f the person causes serious physical injury to another" or "[i]f the person uses a deadly weapon or dangerous instrument." *Id.* § 13-1204(A)(1), (2) (2006).[3] The 2006 indictment stated that Marcia-Acosta, "using a metal bar, a deadly weapon or dangerous instrument, intentionally, knowingly or recklessly caused a physical injury . . . in violation of A.R.S. §§ 13-1203

---

[3] Ariz. Rev. Stat. § 13-1204 has been amended numerous times since Marcia-Acosta's conviction in 2007. All references to § 13-1204 in this opinion are to the 2006 version.

[and] 13-1204." Given this language, the parties are in accord that Marcia-Acosta was indicted for and pled guilty to § 13-1203(A)(1). The parties also agree that Marcia-Acosta's conviction under § 13-1203(A)(1), as aggravated by § 13-1204, does not categorically qualify as a crime of violence under our precedent. They are correct.

In *United States v. Esparza-Herrera*, 557 F.3d 1019 (9th Cir. 2009), the government appealed the district court's ruling that Esparza-Herrera's prior conviction for aggravated assault, in violation of Ariz. Rev. Stat. §§ 13-1203(A)(1) and 13-1204(A)(11), was not a conviction for a crime of violence. We determined that the generic aggravated assault offense definition "requires a mens rea of at least recklessness 'under circumstances manifesting extreme indifference to the value of human life.'" *Id.* at 1025. In Arizona, however, aggravated assault can be committed with a mens rea of ordinary recklessness. *See* Ariz. Rev. Stat. § 13-1203(A)(1). Consequently, the statute of conviction "encompasses conduct beyond [generic] aggravated assault," and, under the categorical approach, is "not a conviction for a crime of violence under Guidelines § 2L1.2(b)(1)(A)(ii)." *Esparza-Herrera*, 557 F.3d at 1025.

It is at the next stage of inquiry, into the impact of the prior conviction on the Guidelines calculation, that the parties' disagreement arises: The government and Marcia-Acosta dispute whether the district court, applying the modified categorical approach, correctly concluded that Marcia-Acosta had been convicted of committing assault *intentionally* under § 13-1203(A)(1). If so, the generic aggravated assault offense definition was satisfied. We turn to that question, beginning with the general principles governing the modified categorical approach.

III.

A.

In *Descamps*, the Supreme Court clarified that the modified categorical approach serves a "limited function," "effectuat[ing] the categorical analysis when a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction." *Descamps*, 133 S. Ct. at 2283. To determine whether a statute is divisible, we consider whether "an element of the crime of conviction contains alternatives, one of which is an element of its federal analogue." *Acosta-Chavez*, 727 F.3d at 909 (citing *Descamps*, 133 S. Ct. at 2283–84).

*Rendon v. Holder*, 764 F.3d 1077, 1086 (9th Cir. 2014), recently held that a disjunctive statute is divisible "only if it contains multiple alternative *elements*, as opposed to multiple alternative *means*." More specifically, under *Rendon*, "[o]nly when state law requires that in order to convict the defendant the jury must unanimously agree that he committed a particular substantive offense contained within the disjunctively worded statute are we able to conclude that the statute contains alternative *elements* and not alternative *means*." *Id.* As only two of the three mental states listed in the disjunctive in § 13-1203(A)(1) — "intentionally" and "knowingly" — are elements of the federal analogue of aggravated assault, Arizona's aggravated assault statute would be subject to the modified categorical approach under *Rendon* only if such mental states are considered alternative elements, rather than alternative means.

Marcia-Acosta did not argue in his opening brief that Arizona's aggravated assault statute is not divisible. Accordingly, we conclude that Marcia-Acosta waived any argument concerning the statute's divisibility. *See United States v. Kama*, 394 F.3d 1236, 1238 (9th Cir. 2005) ("Generally, an issue is waived when the appellant does not specifically and distinctly argue the issue in his or her opening brief.").[4]  We thus assume, without deciding, that Arizona's aggravated assault statute does state alternative mens rea elements, is therefore divisible, and so must be analyzed under the modified categorical approach.

B.

Our question, then, is whether the district court correctly applied the modified categorical approach when it relied upon the single factual-basis statement made by Marcia-Acosta's attorney during the 2007 plea colloquy to conclude that Marcia-Acosta's prior conviction qualified as a crime of violence.  We hold that it did not.

When the statute of conviction is divisible, "the modified categorical approach permits sentencing courts to consult a limited class of documents . . . to determine which alternative formed the basis of the defendant's prior conviction." *Descamps*, 133 S. Ct. at 2281.  These documents include "the charging document, the terms of a plea agreement or

---

[4] In his reply brief, Marcia-Acosta stated that he "does not concede . . . that the statute at issue[] constitutes a divisible statute," but articulated no argument in support of this statement.  Thus, even if we were to consider an issue raised for the first time in a reply brief, his argument has been waived. *See Martinez-Serrano v. INS*, 94 F.3d 1256, 1259 (9th Cir. 1996) ("Issues raised in a brief that are not supported by argument are deemed abandoned.").

transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or . . . some comparable judicial record of this information." *Shepard v. United States*, 544 U.S. 13, 26 (2005). "The court can then . . . compare the elements of the crime of conviction (including the alternative element used in the case) with the elements of the generic crime." *Descamps*, 133 S. Ct. at 2281.

Consideration of only "the elements of the crime of conviction" is the pivotal concept in applying the modified categorical analysis. *Descamps* emphasizes that a court *cannot* use the modified categorical approach "to try to discern what a trial showed, or a plea proceeding revealed, about the defendant's underlying conduct." *Id.* at 2288. Instead, the modified approach must "retain[] the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime." *Id.* at 2285.

In this case, two of the available *Shepard*-approved documents — the charging documents and plea agreement — refer generally to Arizona's aggravated assault statute, and so provide no insight as to the mens rea aspect of § 1203(A)(1) that formed the basis of Marcia-Acosta's conviction. In concluding that Marcia-Acosta had pled to the generic elements of aggravated assault, the district court relied solely upon part of defense attorney Colon's factual-basis statement during the 2007 plea colloquy — that Marcia-Acosta had assaulted the victim "intentionally."

Sentencing courts may review the plea colloquy or other "comparable judicial record." *Shepard*, 544 U.S. at 26. *Shepard* emphasizes, however, that "any enquiry beyond statute and charging document must be narrowly restricted to

implement the object of the statute and avoid evidentiary disputes." *Id.* at 23 n.4. The focus of a court's examination of the transcript of the plea colloquy therefore must be "not to determine 'what the defendant and state judge must have understood as the *factual basis* of the prior plea,'" *Descamps*, 133 S. Ct. at 2284 (emphasis added) (quoting *Shepard*, 544 U.S. at 25), but to assess "whether the plea had 'necessarily' rested on the fact identifying the [offense] as generic," *Shepard*, 544 U.S. at 21 (quoting *Taylor*, 495 U.S. at 602). So restricting the examination of plea colloquies assures that a sentencing court not "substitute . . . a facts-based inquiry for an elements-based one." *Descamps*, 133 S. Ct. at 2293.

This focus is particularly critical in the plea-bargaining context. As *Descamps* specifically cautioned, factual admissions made during a plea hearing may be "downright wrong," because the defendant "often has little incentive to contest facts that are not elements of the charged offense," and "the defendant may not wish to irk the prosecutor or court by squabbling about superfluous factual allegations." *Id.* at 2289. When a defendant pleads guilty to a crime, "he waives his right to a jury determination of only that offense's elements; whatever he says, or fails to say, about superfluous facts cannot license a later sentencing court to impose extra punishment." *Id.* at 2288.[5]

---

[5] Justice Kennedy elaborated on this point in his *Descamps* concurrence:

> [I]n the regular course of the criminal process, convictions may be entered, often by guilty pleas, when either the attorney or the client, or both, have given no consideration to possible later consequences . . . . As a result, certain facts in the documents approved for judicial examination . . . may go uncontested because

Consistent with these admonitions, our post-*Descamps* decisions have recognized that sentencing courts' review of plea colloquies or other "comparable judicial record[s]," *Shepard*, 544 U.S. at 26, for modified categorical approach purposes must be appropriately circumscribed to identify the elements pled to, not the underlying facts. *United States v. Quintero-Junco*, 754 F.3d at 752, for example, held that a district court "misapplied the modified categorical approach" by "review[ing] the transcript of Quintero-Junco's plea colloquy" to determine whether the defendant had been convicted of the elements under Arizona's sexual abuse statute that corresponded to the generic federal forcible sex offense. In that case, the district court had determined that the conduct described in the transcript of the plea colloquy, "show[ing] that Quintero–Junco was accused of attempting forcibly to remove a woman's clothing in order to touch her breasts," constituted a forcible sex offense. *Id.* We held this application of the modified categorical approach "flawed" as violative of *Descamps*, because it focused on whether the defendant "'actually' committed the generic crime," rather than on the elements of the statute for violation of which he was convicted. *Id.*[6]

---

> they do not alter the sentencing consequences of the crime, even though their effect is to require a later enhancement . . . . This significant risk of failing to consider the full consequences of the plea and conviction is troubling.

*Id.* at 2293 (Kennedy, J., concurring) (citations omitted).

[6] *Quintero-Junco* held the district court's error "inconsequential" because the *indictment* to which Quintero-Junco pled guilty contained the "statutory alternative" that "categorically match[ed] the elements of the generic definition." *Quintero-Junco*, 754 F.3d at 752; *see also Coronado v. Holder*, 759 F.3d 977, 986 (9th Cir. 2014) (permitting reliance, under

Similarly, in *United States v. Cabrera-Perez*, 751 F.3d 1000 (9th Cir. 2014), the defendant, like Marcia-Acosta, argued that his prior aggravated assault conviction under Ariz. Rev. Stat. §§ 13-1203 and 13-1204 did not constitute a "crime of violence." He contended — and we accepted — that the transcript of the plea colloquy was "devoid of evidence regarding [his] intent." *Id.* at 1006 n.6 (internal quotation marks omitted). We held that Cabrera-Perez's conviction qualified as a "crime of violence" under the modified categorical approach, but only because the plea colloquy and the written plea agreement referred directly back to the charging language of the complaint, which had "narrow[ed] the charge to generic limits." *Id.* at 1006 (internal quotation marks omitted).[7]

The charging document and plea agreement in this case, unlike those in *Quintero-Junco* or *Cabrera-Perez*, shed no light on whether Marcia-Acosta's prior conviction meets the generic elements of aggravated assault. Rather, they merely restate the disjunctively phrased list of mens rea elements in the cross-referenced statute, § 13-1203(A)(1). Attorney Colon's statement supplying the factual basis at Marcia-Acosta's change of plea hearing is thus the *only* support for

the modified categorical approach, on a certified electronic docket and minutes that "specif[y] that a defendant pleaded guilty to a particular count of a criminal complaint").

[7] Cabrera-Perez's criminal complaint "track[ed] the language," *Cabrera-Perez*, 751 F.3d at 1006, of § 13-1203(A)(2), which proscribes "intentionally placing another person in reasonable apprehension of imminent physical injury." Ariz. Rev. Stat. § 13-1203(A)(2). In contrast to Marcia-Acosta's conviction under § 13-1203(A)(1), a conviction under § 13-1203(A)(2) is a categorical crime of violence, as it "proscribes only intentional conduct." *Cabrera-Perez*, 751 F.3d at 1007.

the district court's determination that Marcia-Acosta's prior conviction qualified as a crime of violence. In light of *Descamps*'s admonition to sentencing courts to focus only on the elements — not the facts — of a defendant's prior conviction, the district court's reliance on this statement, standing alone, was erroneous.

Indeed, this case clearly illustrates the concerns underlying *Descamps*. As a matter of state law, Marcia-Acosta's conviction under § 13-1203(A)(1) could have been supported by a finding of recklessness.[8] Marcia-Acosta was not required to admit he acted knowingly or intentionally. And the trial judge had no reason to so find; under the circumstances of this case, whether the conviction was for "intentional" or "reckless" aggravated assault would not have altered the conviction nor the sentencing consequences.[9] Thus, it made no difference during the plea hearing whether

---

[8] *Moncrieffe v. Holder*, 133 S. Ct. 1678 (2013), noted that, when "examin[ing] what the state conviction necessarily involved . . . we must presume that the conviction rested upon [nothing] more than the least of th[e] acts criminalized." *Id.* at 1684 (second alteration in original) (internal quotation marks omitted). Thus, in applying the modified categorical approach, we would be required to assume that Marcia-Acosta's conviction was for reckless assault.

[9] The simple assault statute provides that "[a]ssault committed intentionally or knowingly pursuant to [subsection (A)(1)] is a class 1 misdemeanor," while "[a]ssault committed recklessly pursuant to [subsection (A)(1)] . . . is a class 2 misdemeanor." Ariz. Rev. Stat. § 13-1203(B). But when an assault is aggravated by "us[ing] a deadly weapon or dangerous instrument," *id.* § 13-1204(A)(2), as is this case here, the aggravated assault is "a class 3 felony," *id.* § 13-1204(B), no matter the defendant's mental state. In other words, Marcia-Acosta's 2007 sentence would not have differed regardless of whether he committed the assault intentionally, knowingly, or recklessly.

he acted with one or the other mental state. Like the defendant in *Descamps*, "[Marcia-Acosta] may have let [his attorney's] statement go by because it was irrelevant to the proceedings [whether he was reckless, knowing or intentional]. He likely was not thinking about the possibility that his silence could come back to haunt him in [a later] sentencing." *Descamps*, 133 S. Ct. at 2289.

Moreover, absent any narrowing language in the charging documents or plea agreement, relying on Colon's statement that Marcia-Acosta committed the assault "intentionally" is no different than relying on a statement to the same effect made by a defendant while on the stand during a trial. The latter approach is clearly foreclosed by *Descamps* as an impermissible "look behind [the defendant's] conviction in search of record evidence that he actually committed the generic offense." *Id.* at 2293. In the trial context, the government would be required to prove that the jury necessarily *found* that Marcia-Acosta had committed a crime intentionally or knowingly, rather than recklessly; demonstrating that there was testimony to that effect would not suffice. That Colon made a statement concerning Marcia-Acosta's mens rea as part of the factual basis during the plea colloquy rather than at trial does not convert an improper fact-based inquiry into an elements-based one.

To support the district court's application of the modified categorical approach, the government points only to our decision in *United States v. Smith*, 390 F.3d 661 (9th Cir. 2004), *amended by* 405 F.3d 726 (9th Cir. 2005). *Smith* reviewed the district court's determination that the defendant's prior convictions under California's burglary statute, Cal. Penal Code § 459, qualified as "violent felonies" for purposes of the sentencing enhancement under the Armed

Career Criminal Act, 18 U.S.C. § 924(e). As California's burglary statute does not require that the defendant's entry be unlawful, it was not a categorical match to generic burglary. Accordingly, the district court applied the modified categorical approach to the record of conviction, which "consist[ed] of the transcript of the plea hearing and the abstract of judgment." *Smith*, 390 F.3d at 664.

As it turned out, the abstract of judgment provided no further clarity as to the elements of Smith's conviction. The district court therefore relied only on the transcript of the plea hearing, in which the prosecutor stated, as part of the factual basis for the burglary charge, that Smith "unlawfully" entered "a dwelling." *Id.* at 663, 665. We held that the prosecutor's statement of the factual basis for the burglary charge, standing alone, "unequivocally establish[ed] that Smith was convicted of unlawfully entering a building." *Id.* at 665.

*Smith* is indeed in tension with our decision today. But the analysis conducted by *Smith* — applying the modified categorical approach to the unlawful entry element — is contrary to *Descamps*, which held that Penal Code § 459 is indivisible, and thus not subject to the modified categorical approach, with respect to that very element. *Descamps*, 133 S. Ct. at 2283. So our application of the modified categorical approach to the unlawful entry element in *Smith* would be *entirely* precluded if we faced the same case today.

Moreover, *Smith* was decided prior to *Descamps*, which more clearly than earlier cases limited the extent to which courts may satisfy the modified categorical approach by looking at the "facts" of prior convictions. Our approval in *Smith* of the district court's consideration of statements by the defense counsel during the plea colloquy — for instance, that

Smith had "entered his former home" and that the "codes were changed," 390 F.3d at 665 (internal quotation marks omitted) — makes clear that *Smith* engaged in the very type of "fact-based" analysis that *Descamps* proscribes. In other words, "[i]nstead of reviewing documents like an indictment or plea colloquy only to determine which statutory phrase was the basis for the conviction," *Smith* "look[ed] to those materials to discover what the defendant actually did." *Descamps*, 133 S. Ct. at 2287 (internal quotation marks omitted). *Smith* therefore is "clearly irreconcilable" with *Descamps*, and is no longer controlling. *Miller v. Gammie*, 335 F.3d 889, 899–900 (9th Cir. 2003) (en banc).

We acknowledge that our conclusion here is in tension with the Third Circuit's decision in *United States v. Marrero*, 743 F.3d 389 (3d Cir. 2014) ("*Marrero II*"). In *Marrero II*, the defendant appealed the district court's finding that his prior conviction under Pennsylvania's simple assault statute, 18 Pa. Cons. Stat. Ann. § 2701(a), qualified as a crime of violence under the Guidelines. As in Arizona, a defendant can be convicted under Pennsylvania's assault statute if he acted intentionally, knowingly, or recklessly. *See* 743 F.3d at 396. The district court determined that Marrero's admissions during the state court plea colloquy — that he "plac[ed] his hands on the victim's neck" and "grabbed [the victim] by the neck, attempting to drag her upstairs" — established that Marrero had pled guilty to an "intentional and knowing violation" of the assault statute. *Id.* at 392–93. Marrero contended that, "by looking to specific facts established during the colloquy," the district court improperly applied the modified categorical approach. *Id.* at 396.

Before *Descamps* was decided, the Third Circuit affirmed Marrero's sentence. After *Descamps*, the Supreme Court

granted Marrero's petition for writ of certiorari, vacated the Third Circuit's judgment, and remanded for further consideration in light of *Descamps*. *Id.* at 393; *see also Marrero v. United States*, 133 S. Ct. 2732 (2013). The Third Circuit once again affirmed, repeating essentially verbatim its earlier holding that the district court had "properly examined" Marrero's plea colloquy to "determine whether he pleaded guilty to intentional, knowing, or reckless assault." *Marrero II*, 743 F.3d at 397; *compare United States v. Marrero*, 677 F.3d 155, 162 (3d Cir. 2012) ("*Marrero I*").

In our view, *Marrero II* cannot be squared with the Supreme Court's clear prohibition on substituting "a facts-based inquiry for an elements-based one." *Descamps*, 133 S. Ct. at 2293. Like Marcia-Acosta, Marrero was not required to act knowingly or intentionally to be convicted of assault; under Pennsylvania law, he could be convicted if he acted recklessly. 18 Pa. Cons. Stat. Ann. § 2701(a)(1). That the Supreme Court vacated and remanded the Third Circuit's original decision in the case suggests, as Justice Alito wrote in his dissent to the order granting Marrero's petition, that the Court was "troubled by the possibility that petitioner was convicted merely for reckless conduct." 133 S. Ct. at 2733 (Alito, J., dissenting). But *Marrero II* discussed *Descamps* only in the context of explaining why the Pennsylvania statute was divisible, and not in the course of applying the modified categorical approach once determining it applicable. *Marrero II*, 743 F.3d at 395–96. Yet, as here, there is no basis for concluding that the defendant was *convicted* of intentional assault, as the charge to which he pleaded guilty was not limited to intentional acts. Such an inference would be tantamount to "look[ing] behind [the] conviction in search of record evidence that he actually committed the generic offense," an approach *Descamps* expressly rejected as

improperly "extending judicial factfinding beyond the recognition of a prior conviction." 133 S. Ct. at 2288, 2293.

To be clear, *Shepard* permits district courts to review transcripts of plea colloquies when applying the modified categorical approach, to ascertain the offense to which the defendant pled guilty. *See* 544 U.S. at 26. If the operative charging document limits the charge to a statutory alternative that meets the generic offense definition, a factual-basis statement at the plea colloquy and the charge, *together*, can establish the crime of conviction, because that fact then *does* become essential. Likewise, there may be circumstances in which a factual-basis statement detail, not extraneous to the conviction, unequivocally establishes that the conviction "'necessarily' rested on the fact identifying the [offense] as generic." *Shepard*, 544 U.S. at 21 (quoting *Taylor*, 495 U.S. at 602).[10]

But courts remain restricted to the modified categorical approach's "focus on the elements, rather than the facts, of a crime." *Descamps*, 133 S. Ct. at 2285. Thus, in a case like this one — in which there is no narrowing through the

---

[10] Where a defendant's factual-basis statement negates all possible statutory alternatives, the statement may be sufficient, standing alone, to establish that the defendant pled to the generic statutory alternative. In such cases, the statement is not extraneous to the conviction. For example, if a defendant pleading guilty to burglary stated, as part of his factual basis, that he "entered a house, not a boat," *cf. Shepard*, 544 U.S. at 17, a reviewing court could conclude that the defendant was not convicted of burgling a boat. Unlike the "boat" and "house" elements of this hypothetical burglary statute, however, the mens rea elements at issue in this case are nested. That is, they are inherently *not* mutually exclusive, as an assault can be reckless, knowing, *and* intentional. A factual-basis admission as to one mental state thus does not negate the possibility of conviction under another.

indictment, information, or other charging document, and no narrowing of the offense of conviction through the actual conviction documents or pleas — a sentencing court may not rely on an extraneous factual-basis statement detail, standing alone, to supply the narrowing for purposes of the modified categorical approach.  At bottom, the *Shepard* documents in this case at most suggest that Marcia-Acosta *committed* the crime of intentional aggravated assault.  They do not show that Marcia-Acosta was *convicted* of that crime.  On the contrary, from this record we cannot say whether he was convicted of the crime of *intentional* aggravated assault, the crime of *knowing* aggravated assault, or the crime of *reckless* aggravated assault.  Additionally, based on the charging documents, these mental states may have been treated as alternative means rather than alternative elements in Marcia-Acosta's case, in which case Marcia-Acosta was convicted of none of these three alternative crimes, but instead was convicted of the single crime of *intentional, knowing or reckless* aggravated assault.[11]  We can say for sure only that the *Shepard* documents do not prove that Marcia-Acosta was convicted of the crime of intentional (or knowing) aggravated assault, and so the modified categorical approach is not satisfied.

In sum, the district court misapplied the modified categorical approach in determining that Marcia-Acosta's prior conviction was for a crime of violence, and therefore

---

[11] Of course, if these three mental states really are alternative means rather than alternative elements — and we assume to the contrary for purposes of our analysis in this case — then this statute of conviction would be indivisible, and the modified categorical approach would not apply at all.  *See Rendon*, 764 F.3d at 1083, 1086.

erred in including the 16-level enhancement in its calculation of the Guidelines sentence.

### IV.

Although advisory after *United States v. Booker*, 543 U.S. 220 (2005), the Guidelines remain "the starting point and the initial benchmark" of any sentencing determination. *Gall v. United States*, 552 U.S. 38, 49 (2007). "[S]entencing proceedings are to begin by determining the applicable Guidelines range. The range must be calculated correctly." *United States v. Carty*, 520 F.3d 984, 991(9th Cir. 2008) (en banc). "A mistake in calculating the recommended Guidelines sentencing range is a significant procedural error that requires us to remand for resentencing." *United States v. Munoz-Camarena*, 631 F.3d 1028, 1030 (9th Cir. 2011) (per curiam). We thus vacate Marcia-Acosta's sentence and remand for resentencing consistent with this opinion. Accordingly, we need not address Marcia-Acosta's arguments that his sentence was otherwise procedurally erroneous and substantively unreasonable.

**VACATED AND REMANDED FOR RESENTENCING.**