**Terry L. SCHNECKER, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–1995.**

Court of Appeals of Alaska.

July 24, 1987.

Allan Beiswenger, Robinson & Beiswenger, Seward, for appellant.

Thomas M. Wardell, Dist. Atty., Kenai, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

OPINION

SINGLETON, Judge.

Terry L. Schnecker pled no contest and was convicted of attempted assault in the first degree, a class B felony. AS 11.41.-200(a)(2);[1] AS 11.31.100(d)(2).[2] The maxi-

---

1. AS 11.41.200 provides, in pertinent part: "(a) A person commits the crime of assault in the first degree if ... (2) with intent to cause serious physical injury to another, the person causes serious physical injury to any person.... (b) Assault in the first degree is a class A felony."

2. AS 11.31.100 provides, in pertinent part:

(a) A person is guilty of an attempt to commit a crime if, with intent to commit a crime, the person engages in conduct which constitutes a substantial step toward the commission of that crime.

....

(d) An attempt is a

....

(2) class B felony if the crime attempted is a class A felony.

mum penalty for a class B felony is ten years' imprisonment. Relevant presumptive terms are respectively four years for a second-felony conviction and six years for a third-felony conviction. AS 12.55.125(d). Schnecker received a sentence of ten years with five years suspended. He appeals, contending that the sentence is excessive. We affirm.

## THE OFFENSE

The facts regarding the offense are largely taken from statements made by Schnecker to the police at the trial of a codefendant. At the trial, Schnecker denied any prior knowledge of the offense. Construing the record most favorably to the state, including admissions made by Schnecker, it appears that Schnecker and a codefendant, E.K., entered into an agreement whereby Schnecker would assist E.K. in luring Curtis Cone to an isolated place where E.K. could physically assault Cone. Schnecker testified that E.K. shot and killed Cone. There is no direct evidence that Schnecker knew that E.K. intended to kill Cone or to assault him with a dangerous instrument.[3]

## THE DEFENDANT

At the time of his sentencing, Schnecker was thirty-three years of age. He had received a high school equivalency diploma, had served in the United States Army and was apparently honorably discharged. He is married and has two children. In addition, the marital home includes his wife's daughter by an earlier marriage. Schnecker has a criminal record consisting of two misdemeanor offenses and several traffic-related offenses. He has maintained fairly steady employment. The only negative information in the presentence report, be-

yond the facts surrounding the current offense, is Schnecker's extensive drug and alcohol dependency. The presentence officer's evaluation of Schnecker includes the following:

One concern is the defendant's dysfunctional lifestyle: Mr. Schnecker appears to have one of the most extensive abuse histories seen in the Kenai court. As such, his prognosis for long-term rehabilitation is guarded at best. Long-term residential treatment is necessary, followed by ongoing outpatient treatment and regular monitoring. To his credit, he has opted to be frank about his abuse. Accordingly, the sentencing recommendation will reflect incentives for him to address his substance [abuse] problems.

## THE SENTENCE

The trial court carefully considered the standards set out in AS 12.55.015(b), and the *Chaney* criteria: rehabilitation, deterrence of self and others, reaffirmation of community norms and isolation.[4] *State v. Chaney*, 477 P.2d 441, 443–44 (Alaska 1970); *see also* AS 12.55.005 (essentially establishing the *Chaney* criteria as legislative standards governing sentencing). Superior Court Judge Roy H. Madsen also considered our decision in *Austin v. State*, 627 P.2d 657 (Alaska App.1981) (generally a first-felony offender should receive a more favorable sentence than the presumptive term for a second-felony offender), noting that the presumptive term for a second-felony offender convicted of a class B felony is four years. The court observed that Schnecker had a number of traffic misdemeanor offenses including two driving while intoxicated convictions and one driving with license revoked or suspended conviction. Additionally, Schnecker had con-

---

**3.** E.K. was tried for Cone's murder and was acquitted of all charges.

**4.** AS 12.55.015(b) provides:
The court, in exercising sentencing discretion as provided in this chapter, shall impose a sentence involving imprisonment when
(1) the defendant deserves to be in prison, considering the seriousness of the present offense and the defendant's prior criminal history, and imprisonment is equitable considering

sentences imposed for other offenses and other defendants under similar circumstances;
(2) imprisonment is necessary to protect the public from further harm by the defendant; or
(3) sentences of lesser severity have been repeatedly imposed for substantially similar offenses in the past and have proven ineffective in deterring the defendant from further criminal conduct.

victions for two class B misdemeanors, misconduct involving a controlled substance in the sixth degree, and misconduct involving weapons in the third degree. Judge Madsen noted that despite the unsuspended time that Schnecker had hanging over his head for these various misdemeanor convictions, he had not paid his fines and had not quit driving despite the revocation of his license. Judge Madsen was particularly concerned about Schnecker's use of alcohol and drugs. Judge Madsen expressed reservations regarding Schnecker's truthfulness and particularly the accuracy of his testimony at E.K.'s trial.

Judge Madsen recognized that a sentence in excess of four years required a finding of aggravating factors, or the kind of extraordinary circumstances that would warrant referral of a second-felony offender for sentencing before a three-judge panel. *See* AS 12.55.155(c); AS 12.55.165–.175. He therefore made a number of specific findings. He concluded that Schnecker's conduct constituting the offense was among the most serious conduct included in the definition of the offense, reasoning that an attempted assault in the first degree that results in the death of the intended victim was among the most serious. *See* AS 12.55.155(c)(10). Judge Madsen characterized Schnecker as a "Judas goat," who literally led Cone to his death. In the court's view, the crime was directly related to Schnecker's abuse of drugs and alcohol. The court sentenced Schnecker to a term of ten years with five years suspended.

### DISCUSSION

Schnecker contends that the trial court erred in finding that his conduct was among the most serious contemplated within the definition of the offense of attempted assault in the first degree. In support of this contention, he makes two closely related arguments: that his plea agreement with the state precluded the use of this aggravating factor to give him an enhanced sentence as a matter of law; and, that the facts in the record, construed most favorably to the state, would not support a finding that he committed a higher degree of offense.

 Alaska Rule of Criminal Procedure 11 recognizes charge-and-sentence bargaining between criminal defendants and the prosecution. Alaska R.Crim.P. 11(e). It provides that the parties must notify the trial judge before whom the plea is to be entered of any such agreement. Alaska R.Crim.P. 11(e)(2). At that point the trial judge has two options. The judge may accept the plea agreement and so inform the defendant, in which case the sentence must embody the disposition provided for in the plea agreement or another disposition more favorable to the defendant. Alaska R.Crim.P. 11(e)(3). Alternatively, the trial court may reject the plea agreement, in which case it must so inform the parties and afford the defendant an opportunity to withdraw his plea, warning the defendant that if he persists in the plea, the disposition of the case may be less favorable than that contemplated by the plea agreement. Alaska R.Crim.P. 11(e)(4).

We have carefully considered the record and find no basis for a determination that the parties entered into a "sentence bargain" mandating a sentence more favorable than the sentence actually received by Schnecker. Apparently, Schnecker is not arguing that any such express agreement existed. Rather, he argues that it is fundamentally unfair for the trial court to sentence for a lesser offense based upon an assumption, no matter how well supported by verified facts, that the defendant committed a higher offense. We have rejected this argument a number of times. *See, e.g., Benboe v. State,* 698 P.2d 1230, 1232 (Alaska App.1985); *Brezenoff v. State,* 658 P.2d 1359, 1363 (Alaska App.1983); *Fee v. State,* 656 P.2d 1202, 1204–06 (Alaska App. 1982); *Huckaby v. State,* 632 P.2d 975, 976 (Alaska App.1981).

In *Fee,* we stressed that while a trial court may, within statutory limits, impose a severe sentence for a lesser crime on the ground that the accused actually committed a greater crime, such a determination must be based either on an admission of the defendant, or on verified facts in the record. *Fee,* 656 P.2d at 1205. In the

instant case, it does not appear that Schnecker entered into his plea in detrimental reliance on a promise that his sentence would not exceed four years' imprisonment. As we said in *Fee,*

> A defendant can only be sentenced to a penalty appropriate for the crime for which he is convicted or to which he pleads. A jury verdict or a plea of guilty or *nolo contendere* serves to place a ceiling on the sentence that may be imposed. Nevertheless, in determining an appropriate sentence, the trial judge must evaluate the defendant and the crime or crimes which he has committed. In so doing, the judge must independently review the facts and make findings which, if supported by substantial evidence, will be sustained on appeal. One of the factors which trial judges consider in determining an appropriate sentence is whether a defendant is a "worst offender." In order to make this determination, the trial judge must determine precisely what the defendant did. Where the defendant pleads guilty to a lesser offense and a review of the facts establishes that he, in fact, committed a greater offense, the court may legitimately find that he is a worst offender for purposes of sentencing him for the lesser offense.

656 P.2d at 1204 (citations omitted); *see also State v. Wortham,* 537 P.2d 1117, 1120 (Alaska 1975).

At E.K.'s trial, Schnecker apparently testified at length. He denied any prior knowledge of a planned assault on Cone. Based on this testimony, Schnecker argues that there is nothing in the record to support a finding that he foresaw any injury to Cone at the time he made contact with him. Consequently, Schnecker concludes that there was insufficient verified information in the record to support a finding that he, in fact, committed a more serious offense than the one to which he pled.

It appears that on the evening of the homicide, Schnecker went to the service station where he worked with his wife and told her that he had gone to someone's house and taught him a lesson. An individual by the name of Gordon Swain was also at the gas station at that time and told the authorities that Schnecker had "said something about teaching somebody a lesson." Additionally, the state argued at the sentencing hearing that Schnecker had told Sergeant Glenn Flothe, of the Alaska State Troopers, and Mark Prentice, a correction officer, that he and E.K. had gone over to Cone's to "thump on" him or to teach him a lesson. In his remarks to the court, defense counsel conceded that, taking the facts as represented by the state, Schnecker had aided and abetted or assisted E.K. in luring Cone to the vehicle, knowing that E.K. was going to assault Cone. He stressed that there was no evidence that Schnecker foresaw a homicide.

We are satisfied that Schnecker's admissions, construed in the light most favorable to the state, support Judge Madsen's conclusion that Schnecker's conduct was among the most serious contemplated within the definition of the offense of attempted assault in the first degree. Assuming that Schnecker aided and abetted E.K. in luring Cone to an isolated location in the expectation that E.K. would beat Cone but not seriously injure or kill him, a jury could nonetheless conclude that Schnecker's conduct was more serious than merely aiding and abetting an attempted assault in the first degree.

In *Tison v. Arizona,* — U.S. —, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987), the Court held that the eighth amendment proportionality requirement does not bar the imposition of the death penalty upon a defendant who, though he did not intend to commit murder, participated in a major way in a felony that resulted in murder and who acted with reckless indifference to the value of human life. In so holding, the Supreme Court discusses at great length the culpability of those who aid in acts creating substantial risk of violence to others, where the actual injuries exceed the defendant's expectations.

It is not necessary, however, for us to explore this issue further to determine precisely what greater offense a jury could find that Schnecker committed. Since the

trial court could find that Schnecker's actions were in part premeditated (*i.e.*, that at the least he foresaw physical injury, if not serious physical injury, to Cone), increasing the presumptive term by one year of incarceration is not clearly mistaken; nor was the court clearly mistaken in concluding that Schnecker's conduct was among the most serious within the definition of the offense to which he pled.

Schnecker makes two other arguments. First, he contends that the trial court erred in enhancing his sentence based only on a series of prior misdemeanor convictions. *See, e.g., Reynolds v. State,* 736 P.2d 1154 (Alaska App.1987). Second, he argues that Judge Madsen placed undue emphasis on his belief that Schnecker had been untruthful. *See, e.g., Strachan v. State,* 615 P.2d 611 (Alaska 1980). Schnecker points out that while the trial court can consider untruthfulness in determining a defendant's potential for rehabilitation, it cannot in effect sentence the defendant for a perjury for which he has not been convicted. Alternatively, Schnecker argues, that his criminal history and drug usage did not qualify him as a worst offender even if his offense was among the worst offenses. *See, e.g., Wortham,* 537 P.2d at 1120. In our view, Judge Madsen's treatment of "untruthfulness" was limited to a determination that Schnecker had in fact contemplated an assault on Cone at the time he assisted E.K. in luring and transporting Cone to a secluded place. This issue thus merges with Judge Madsen's conclusion that Schnecker's conduct was among the most serious within the definition of the offense to which he pled. We are also satisfied that Judge Madsen's conclusion that Schnecker was a "worst offender" was primarily based upon his conclusion that there was a causal connection between Schnecker's conduct and Cone's death. *See Wilson v. State,* 582 P.2d 154, 156–57 (Alaska 1978) (upholding a worst offender classification based solely on the seriousness of the defendant's conduct in committing the offense for which he was sentenced).

The sentence of the superior court is AFFIRMED.