**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
           *Plaintiff-Appellant,*

v.

GERARDO ESPARZA-HERRERA, a.k.a.
Omar Brabo Beltran,
           *Defendant-Appellee.*

No. 07-30490

D.C. No.
CR-06-00219-BLW

OPINION

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, District Judge, Presiding

Argued and Submitted
December 11, 2008—Seattle, Washington

Filed February 25, 2009

Before: Ronald M. Gould, Richard C. Tallman, and
Consuelo M. Callahan, Circuit Judges.

Per Curiam Opinion;
Concurrence by Judge Gould

## COUNSEL

David E. Hollar, United States Department of Justice, Washington, DC, for the plaintiff-appellant.

Thomas Monaghan, Federal Public Defender Services of Idaho, Biose, Idaho, for the defendant-appellee.

## OPINION

PER CURIAM:

The United States Government appeals the district court's ruling that Gerardo Esparza-Herrera's prior conviction for

aggravated assault under Arizona Revised Statutes ("A.R.S") § 13-1204(A)(11) was not a conviction for a "crime of violence" under section 2L1.2 of the United States Sentencing Guidelines (the "Guidelines"). The district court held that the Arizona statute did not correspond to the generic definition of "aggravated assault" that is enumerated as a "crime of violence" in Guidelines § 2L1.2. As a result, the district court did not apply a 16-level enhancement to Esparza-Herrera's sentence for illegal reentry into the United States by a deported alien. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(b), and we affirm.

# I

Gerardo Esparza-Herrera pled guilty in July 2007 to violating 8 U.S.C. 1326(a), which prohibits unauthorized reentry by a deported alien. Esparza-Herrera's Presentencing Report ("PSR") revealed a 2000 Arizona conviction for aggravated assault, in violation of A.R.S. § 13-1204(A)(11),[1] which provides that a person commits aggravated assault when "the person commits the assault by any means of force that causes temporary but substantial disfigurement, temporary but substantial loss or impairment of any body organ or part or a fracture of any body part." Under Arizona law, a person commits assault by "[i]ntentionally, knowingly or recklessly causing any physical injury to another person." Ariz. Rev. Stat. § 13-1203(A)(1). Esparza-Herrera's indictment alleged that he "intentionally, knowingly or recklessly . . . caused a temporary but substantial disfigurement" to the victim. No other official judicial document forming the record of conviction contained specific information about Esparza-Herrera's conduct.[2]

---

[1]A.R.S. § 13-1204 was revised after Esparza-Herrera's conviction. The former A.R.S. § 13-1204(A)(11) provision now appears at A.R.S. § 13-1204(A)(3).

[2]According to the PSR, Esparza-Herrera broke into the house of his victim, whom he had dated for several months, tied her up, and beat her over a four hour period. Police officers found the victim with blood on her hands and face, both eyes swollen shut, and bite marks all over her body.

The PSR at first concluded that Esparza-Herrera's prior aggravated assault conviction was a conviction for a crime of violence and accordingly recommended a 16-level enhancement to his sentence pursuant to section 2L1.2(b)(1)(A)(ii) of the Guidelines. Esparza-Herrera objected to the PSR's recommendation on the ground that his aggravated assault conviction was not a conviction for a crime of violence. The Probation Department acquiesced, and the revised PSR instead recommended a four-level enhancement for a "conviction for any other felony" as provided by Guidelines § 2L1.2(b)(1)(D). This change reduced Esparza-Herrera's sentencing range from 70-87 months to 21-27 months.

The government challenged the revised PSR, but the district court held that a 16-level enhancement was inappropriate even though the Guidelines specify that aggravated assault is a crime of violence. The district court held that the generic definition of aggravated assault requires at least a heightened version of recklessness, one in which the defendant's conduct manifests "extreme indifference to the value of human life." It held that A.R.S. § 13-1204(A)(11) was defined more broadly than generic aggravated assault because it encompassed "garden-variety" reckless conduct. The district court did not apply the modified categorical approach because the government conceded that the record of conviction contained no other information about Esparza-Herrera's conduct. The court concluded that the "crime of violence" enhancement did not apply because Esparza-Herrera's statute of conviction did not correspond to the generic definition of aggravated assault and was thus not a crime of violence under the Guidelines. The government appealed.

## II

We review a district court's interpretation of the Guidelines *de novo*. *United States v. Dallman*, 533 F.3d 755, 760 (9th Cir. 2008). We also review *de novo* a district court's ruling that a prior conviction qualifies as a "crime of violence" under

Guidelines § 2L1.2. *United States v. Cortez-Arias*, 403 F.3d 1111, 1114 n.7 (9th Cir. 2005).

Section 2L1.2(b)(1)(A)(ii) of the Guidelines applies a 16-level sentencing enhancement to a defendant convicted under 8 U.S.C. § 1326 when that "defendant previously was deported" after a conviction for a "crime of violence." The only issue on appeal is whether the district court should have applied this enhancement. We use the categorical approach set forth in *Taylor v. United States*, 495 U.S. 575, 602 (1990), to determine whether a defendant's prior conviction satisfies the Guidelines definition of a crime of violence. *United States v. Pimentel-Flores*, 339 F.3d 959, 968 (9th Cir. 2003). Under this approach the state statute of conviction is "compared with the generic definition of that crime to determine if the defendant's conviction is a crime of violence pursuant to the Sentencing Guidelines." *United States v. Velasquez-Reyes*, 427 F.3d 1227, 1229 (9th Cir. 2005). Ordinarily, when the categorical approach fails we apply the modified categorical approach, which examines "documents in the record of conviction to determine if there is sufficient evidence to conclude that a defendant was convicted of the elements of the generically defined crime . . . ." *United States v. Ladwig*, 432 F.3d 1001, 1003 n.5 (9th Cir. 2005) (internal citation omitted). Here, however, the government concedes that the record of conviction is insufficient to satisfy the modified categorical approach. Hence we are concerned solely with the application of the categorical approach.

**[1]** The Application Note to Guidelines § 2L1.2 defines a "crime of violence" as any one of several enumerated offenses, including "aggravated assault." U.S.S.G. § 2L1.2 n.1(b)(iii); *see also United States v. Rising Sun*, 522 F.3d 989, 996 (9th Cir. 2008) (stating that application notes are generally "treated as authoritative interpretations of the Sentencing Guidelines").[3] "When an offense is specifically enumerated

---

[3]The Application Notes alternatively define a "crime of violence" as an "offense under federal, state, or local law that has as an element the use,

by the Application Notes as a 'crime of violence,' we have consistently drawn the conclusion that the offense is a *per se* crime of violence under the Guidelines." *United States v. Rodriguez-Guzman*, 506 F.3d 738, 741 (9th Cir. 2007). Therefore, to determine whether Esparza-Herrera's prior aggravated assault conviction was a conviction for a crime of violence, we must decide if A.R.S. § 13-1204(A)(11) corresponds to the Guidelines definition of aggravated assault.

**[2]** Esparza-Herrera argues that his statute of conviction is broader than the generic definition of aggravated assault because Arizona law permits an aggravated assault conviction for ordinary recklessness while the Model Penal Code requires a heightened form of recklessness. In Arizona a person commits assault by "[i]ntentionally, knowingly or *recklessly* causing any physical injury to another person." Ariz. Rev. Stat. § 13-1203(A)(1) (emphasis added). Both Arizona and the Model Penal Code define "recklessly" similarly, but under the Model Penal Code reckless behavior can sustain a conviction for "simple assault" only. *See* MODEL PENAL CODE §§ 2.02 (defining "recklessly"), 211.1(1)(A) (defining "simple assault"). The Model Penal Code provides that aggravated assault occurs only when a person acts purposefully, knowingly, or "recklessly under circumstances manifesting extreme indifference to the value of human life." MODEL PENAL CODE § 211.1(2)(a). Esparza-Herrera argues that the lack of an "extreme indifference" requirement in A.R.S. § 13-1204(A)(11) makes his statute of conviction substantially broader than

---

attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2 n.1(b)(iii). Any argument that A.R.S. 13-1204(A)(11) is a crime of violence under this definition is foreclosed by *United States v. Narvaez-Gomez*, which held that under the categorical approach crimes of violence not enumerated by the Guidelines are limited to "offenses committed through intentional use of force against the person of another rather than reckless or grossly negligent conduct." 489 F.3d 970, 976 (9th Cir. 2007).

aggravated assault under the Model Penal Code and, consequently, under the Guidelines.

The government counters that we should follow the Fifth Circuit, which held that a state statute permitting a conviction for aggravated assault on ordinary reckless conduct can still qualify as "aggravated assault" under the Guidelines. *United States v. Mungia-Portillo*, 484 F.3d 813, 816-17 (5th Cir. 2007). The Fifth Circuit held that the absence of an "extreme indifference" requirement in a Tennessee statute was "not dispositive of whether the aggravated assault falls within or outside the plain, ordinary meaning of the enumerated offense of aggravated assault." *Id.* at 817. The court concluded that "the difference in the definition of 'reckless' between the Tennessee statute and the Model Penal Code does not remove the Tennessee statute from the family of offenses commonly known as 'aggravated assault.' " *Id.* (internal citations omitted).

The Fifth Circuit's reasoning is not without insight but is foreclosed by our precedent. The Fifth Circuit uses the "common sense approach" to determine whether a prior offense constitutes a crime of violence under Guidelines § 2L1.2(b)(1)(A)(ii) when the prior offense is an enumerated offense in the Application Notes. *See United States v. Mendoza-Sanchez*, 456 F.3d 479, 481-82 (5th Cir. 2006). Were we to follow this approach, we would determine whether A.R.S. § 13-1204(A)(11) "is equivalent to the enumerated offense of aggravated assault as that term is understood in its ordinary, contemporary, and common meaning." *Mungia-Portillo*, 484 F.3d at 816 (internal citations omitted).

**[3]** We do not use the common sense approach. Instead, we must apply the categorical approach "even when the object offense is enumerated as a *per se* crime of violence under the Guidelines." *Rodriguez-Guzman*, 506 F.3d at 744. In applying the categorical approach to a "traditional crime" such as aggravated assault, "we derive [the crime's] uniform meaning

from the generic, contemporary meaning employed by most states, guided by scholarly commentary." *United States v. Gomez-Leon*, 545 F.3d 777, 790 (9th 2008). The Model Penal Code "serve[s] as an aid" in determining an offense's generic meaning. *Rodriguez-Guzman*, 506 F.3d at 744 (citing *Taylor*, 495 U.S. at 598). We derive the meaning of an enumerated Guidelines crime not from the offense's ordinary meaning but rather by surveying the Model Penal Code and state statutes to determine how they define the offense. Thus even if A.R.S. § 13-1204(A)(11) is equivalent to aggravated assault "as we generally understand that term," *United States v. Izaguirre-Flores*, 405 F.3d 270, 275 (5th Cir. 2005), we must conclude that Esparza-Herrera's prior conviction was not for generic aggravated assault if together the Model Penal Code and most states define aggravated assault more narrowly than does the Arizona statute.

The government claims that the difference between the Arizona and Model Penal Code mens rea requirements is not a meaningful distinction. The government relies on *United States v. Velasquez-Reyes*, 427 F.3d 1227 (9th Cir. 2005), in which we held that a state statute defining arson as "knowing and malicious" conduct was not broader than the generic definition of arson, which required a "willful and malicious" act. *Id*. at 1230. The government overstates *Velasquez's* impact. We stated that in the arson context the common law definition of "willful" encompasses "knowing" and the defendant could not "demonstrate how a person could act 'knowingly and maliciously' but not 'willfully and maliciously.' " *Id*. Here, by contrast, "recklessly under circumstances manifesting an extreme indifference to human life" does not encompass "recklessly," and a defendant can be reckless without manifesting an extreme indifference to human life.

**[4]** We agree with Esparza-Herrera that the Model Penal Code commentary shows that the "extreme indifference" recklessness requirement establishes a mens rea standard for aggravated assault arguably higher than ordinary recklessness.

The commentary to the Model Penal Code definition of aggravated assault states that the "extreme indifference" clause specifies a "special character of recklessness." 2 Am. Law Inst., MODEL PENAL CODE & COMMENTARIES § 211.1 cmt. 4, at 189 (1980). The aggravated assault definition "reserves major felony sanctions for assaults . . . where the actor was at least reckless 'under circumstances manifesting extreme indifference to the value of human life.' " *Id*. This language supports the idea that the Model Penal Code drafters envisioned heightened penalties specifically for assaults conducted with "extreme indifference" recklessness.

The Model Penal Code commentary further comments on the "extreme indifference" clause in its discussion of murder. *See id*. at 189 (stating that the "extreme indifference" requirement "is adapted from the definition of murder" and that "its meaning is discussed in the commentary to that section"). That discussion provides further evidence that "extreme indifference" recklessness is different from ordinary recklessness. The commentary suggests that "extreme indifference" recklessness "should be treated as murder and [ ] less extreme recklessness should be punished as manslaughter." *Id*. § 210.2 cmt. 4, at 22. It adds that "extreme indifference" recklessness represents the "kind of reckless homicide that cannot fairly be distinguished in grading terms from homicides committed purposely or knowingly." *Id*. at 21.

**[5]** We hold that under the categorical approach, assessing the law of other jurisdictions and scholarly comment, ordinary recklessness is a broader mens rea requirement for aggravated assault than is "recklessness under circumstances manifesting extreme indifference to human life." Accordingly, we conclude that A.R.S. § 13-1204(A)(11) is broader than the Model Penal Code's definition of aggravated assault because the Arizona statute alone encompasses acts done with ordinary recklessness.

**[6]** With this difference in mind, under our categorical approach we next determine whether most states follow the

Model Penal Code in requiring more than ordinary reckless-ness to sustain an aggravated assault conviction. *See Rodriguez-Guzman*, 506 F.3d at 744 ("[A]n offense's generic definition under the Guidelines can be drawn from the 'sense in which the term is now used in the criminal codes of most States.' " (quoting *Taylor*, 495 U.S. at 598)). Although sur-veys of state statutes conducted by the district court, the gov-ernment, and Esparza-Herrera reach different results, all three agree that the majority of states define aggravated assault as requiring at least "extreme indifference" recklessness. The government concedes that 22 states require either knowledge or intent for an aggravated assault conviction. The govern-ment further acknowledges that 10 states and the District of Columbia follow the Model Penal Code definition requiring "extreme indifference" recklessness. In sum, under the gov-ernment's own survey 33 jurisdictions require, at a minimum, a heightened form of recklessness to sustain an aggravated assault conviction. Accepting the government's analysis and the premises of our circuit precedent, we hold that a majority of states define aggravated assault as requiring at least a heightened, "extreme indifference" form of recklessness. *Cf. Estrada-Espinoza v. Mukasey*, 546 F.3d 1147, 1153 (9th Cir. 2008) (en banc) (describing 35 states setting the age of con-sent at below 18 as "the vast majority of states"). We con-clude that A.R.S. § 13-1204(A)(11) encompasses conduct beyond aggravated assault, as it is defined by the Model Penal Code and a majority of states, and therefore a conviction under that statute under our precedent is not a conviction for a crime of violence under Guidelines § 2L1.2(b)(1)(A)(ii).

## III

Under the categorical approach, aggravated assault requires a mens rea of at least recklessness "under circumstances man-ifesting extreme indifference to the value of human life." Esparza-Herrera's statute of conviction, A.R.S. § 13-1204(A)(11), encompassed ordinary recklessness, and there-fore his conviction was not a conviction for generic aggra-

vated assault or a crime of violence. We conclude that the district court correctly denied the government's request for a 16-level sentencing enhancement, and accordingly we need not address Esparza-Herrera's other arguments.

**AFFIRMED.**

GOULD, Circuit Judge, with whom TALLMAN and CALLAHAN, Circuit Judges, join, Concurring:

Our per curiam opinion for the court affirms the district court's decision that Gerardo Esparza-Herrera's prior conviction for violating A.R.S. § 13-1204(A)(11), based on his guilty plea, does not qualify as a "crime of violence" under U.S.S.G. § 2L1.2(1)(A)(ii) for purposes of enhancement. Under our precedent there seems to be no doubt that a reckless assault, even one causing significant injury, is not a "crime of violence" because it is not a generic "aggravated assault" for Guidelines purposes if the recklessness is not heightened by an extreme indifference to the value of human life, and the Arizona statute to which Esparza-Herrera pled guilty did not so require.

This precedential line of reasoning, however, largely ignores that U.S.S.G. § 2L1.2(1)(A)(ii) calls for enhancement of sentence in cases of a prior conviction for a crime of violence to support a longer sentence for those who pose a danger to the public. A conviction for violation of A.R.S. § 13-1204(A)(11) by its necessary terms shows that a person has previously and recklessly assaulted another, causing a substantial physical injury. The statute encompasses any "temporary but substantial" disfigurement or bodily impairment, which is serious enough to warrant the public's protection.

I would prefer to conclude that Esparza-Herrera might deservedly be sentenced to a longer term in the public's inter-

est, without regard to our doctrinal standard requiring us to assess what the majority of jurisdictions view as aggravated assault. In my view it would be better if we could look at the matter functionally, balancing fairness to the defendant being sentenced with fairness to the public that deserves protection. A "common sense approach" that examines the "ordinary, contemporary, and common meaning" of A.R.S. § 13-1204(A)(11) would strike this balance. *United States v. Mungia-Portillo*, 484 F.3d 813, 816 (5th Cir. 2007).

But in this esoteric sphere of legal analysis our circuit precedent in substance says that common sense is out and instead we must canvass and assess what the majority of jurisdictions have concluded. I might disagree with the conclusion of the Fifth Circuit in *Mungia-Portillo* to the extent it suggests that there is no relevant difference between extreme indifference and ordinary recklessness, but I don't think that such a difference should be very important in assessing whether there has been an aggravated assault. I would prefer to use the Fifth Circuit's "common sense" approach, rather than trying to assess the standard jurisdiction by jurisdiction. What is important to me is whether the Arizona statute to which Esparza-Herrera pled guilty shows an offense sufficiently serious that we should consider it a "crime of violence" warranting a higher sentence under the advisory Guidelines in the interest of protecting the community. Using a common sense approach, I would have no problem concluding that Esparza-Herrera's guilty plea to violating A.R.S. § 13-1204(A)(11) yielded a prior conviction of a crime of violence for purposes of calculating the range of the advisory Sentencing Guidelines, even if supported only by the recklessness required under the statute to which he pled guilty.[1]

---

[1]Because the district court sentenced at the high end of the Guidelines, this case does not present the question whether an above-Guidelines sentence might have been reasonable even if circuit precedent is applied to negate the "crime of violence" enhancement of the offense level.