**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

ALBERTO GARCIA-JIMENEZ, AKA
Nelih Alexis Miranda,
*Defendant-Appellant*.

No. 14-10484

D.C. No.
4:14-cr-00973-
CKJ-DTF-1

OPINION

Appeal from the United States District Court
for the District of Arizona
Cindy K. Jorgenson, District Judge, Presiding

Argued and Submitted
September 15, 2015—San Francisco, California

Filed November 19, 2015

Before: William A. Fletcher, Marsha S. Berzon,
and Carlos T. Bea, Circuit Judges.

Opinion by Judge Berzon

## SUMMARY[*]

### Criminal Law

The panel vacated a sentence for illegal reentry into the United States, and remanded for resentencing, in a case in which the district court increased the defendant's base offense level on the ground that his prior New Jersey aggravated assault conviction constituted a categorical "crime of violence"under U.S.S.G. § 2L1.2.

The panel held that the provision of the New Jersey statute under which the defendant was convicted, N.J. Stat. Ann. § 2C:12-1(b)(1), does not qualify as a federal generic aggravated assault, and therefore is not a "crime of violence," both because (1) § 2C:12-1(b)(1) punishes conduct committed with only extreme indifference recklessness and is therefore broader than the general federal offense; and (2) New Jersey's definition of "attempt" is broader than the federal generic definition in that New Jersey, which criminalizes attempts comprised of solely preparatory acts, has specifically rejected the prevalent "probable desistance" test.

The panel concluded that the error was not harmless.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Davina T. Chen (argued), Glendale, California, for Defendant-Appellant.

Lawrence C. Lee (argued) and Lauren G. Labuff, Assistant United States Attorneys, John S. Leonardo, United States Attorney, Robert L. Miskell, Appellate Chief, United States Attorney's Office, District of Arizona, Tucson, Arizona, for Plaintiff-Appellee.

**OPINION**

BERZON, Circuit Judge:

Alberto Garcia-Jimenez pled guilty to illegal reentry into the United States in violation of 8 U.S.C. § 1326. At sentencing, the district court increased Garcia-Jimenez's base offense level because of a prior aggravated assault conviction in New Jersey. The court concluded that the conviction constituted a categorical "crime of violence" under U.S. Sentencing Guidelines section 2L1.2. Increasing the base offense level for illegal reentry by 16 levels pursuant to section 2L1.2 increased the Guidelines range from 10-to-16 months to 46-to-57 months. The court sentenced Garcia-Jimenez to serve 46 months, but stated, with no further explanation, that, even if the aggravated assault conviction was not a crime of violence, it would impose the same sentence.

On appeal, Garcia-Jimenez argues that his prior conviction is not a crime of violence because: (1) contrary to the New Jersey statute, the generic federal offense of

aggravated assault requires a mens rea greater than recklessness under circumstances manifesting extreme indifference to the value of human life ("extreme indifference recklessness"); and (2) New Jersey's definition of "attempt," an element alternatively incorporated into the statute of conviction, is broader than the federal generic definition of "attempt."

We hold that, for both reasons, the provision of the New Jersey statute under which Garcia-Jimenez was convicted does not qualify as federal generic aggravated assault and therefore is not a "crime of violence." Because the district court's Guidelines error was not harmless, we vacate the sentence and remand to the district court for resentencing.

I.

Garcia-Jimenez is a citizen of Honduras. In 2009, he was arrested in New Jersey and indicted on several counts arising from an incident in which, after getting into an argument while drunk during a card game, he stabbed another card player. He pled guilty to aggravated assault, count one of the indictment, which charged that he "attempt[ed] to cause serious bodily injury . . . and/or [] purposely or knowingly cause[d] serious bodily injury . . . and/or under circumstances manifesting extreme indifference to the value of human life, [] recklessly cause[d] serious bodily injury to [another.]" The language of the indictment closely tracked the New Jersey aggravated assault statute, which reads: "A person is guilty of aggravated assault if he: . . . [i] Attempts to cause serious bodily injury to another, or [ii] causes such injury purposely or knowingly or [iii] under circumstances manifesting extreme indifference to the value of human life recklessly causes such injury . . . ." N.J. Stat. Ann. § 2C:12-1(b)(1).

Documents from the New Jersey proceedings do not specify which of the three prongs of the New Jersey statute Garcia-Jimenez was convicted of violating.

Garcia-Jimenez was sentenced for the aggravated assault conviction and served time in prison, after which, in September 2013, the U.S. Department of Homeland Security deported him.  He was found in Arizona in May 2014 and charged with illegal reentry in violation of section 1326(a), as enhanced by subsection (b)(2).[1]

After Garcia-Jimenez pled guilty, and in anticipation of sentencing, the U.S. Probation Office prepared a pre-sentence report ("PSR").  The PSR recommended that the district court depart upward from the Guidelines sentence because Garcia-Jimenez's prior conviction understated the seriousness of the offense for which he had been convicted.  Garcia-Jimenez

---

[1] Section 1326(a) provides, in relevant part, that:

> [s]ubject to subsection (b) of this section, any alien who–
>
> > (1) has been . . . deported . . . while an order of exclusion, deportation, or removal is outstanding, and thereafter
> >
> > (2) enters, attempts to enter, or is at any time found in, the United States . . .
>
> shall be fined under Title 18, or imprisoned not more than 2 years, or both.

Section 1326(b)(2) provides that in the case of any alien "whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under [Title 18], imprisoned not more than 20 years, or both."

objected to the PSR, arguing that, in proposing the above-Guidelines sentence, the probation officer improperly relied on statements from the police report describing the incident. The Probation Office then revised the PSR, dropping the understated-offense enhancement and instead recommending a 16-level crime-of-violence enhancement under Guidelines section 2L1.2. That section provides: "If the defendant previously was deported . . . after . . . a conviction for a felony that is . . . a crime of violence . . . increase [the base offense level] by 16 levels . . . ." U.S.S.G. § 2L1.2(b)(1)(A). The comment to that section enumerates "aggravated assault" as a crime of violence. *See id.* cmt. n.1(B)(iii).[2]

The PSR acknowledged that under the categorical approach, the aggravated assault conviction probably was not a categorical crime of violence. But it nonetheless recommended the court apply the enhancement using the

---

[2] The comment provides, in full: "'Crime of violence' means any of the following offenses under federal, state, or local law: Murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses (including where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced), statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2 cmt. n.1(B)(iii).

Although the United States quoted the "use of physical force" catchall portion of the comment in their brief on appeal, it made no argument that Garcia-Jimenez's prior conviction qualified as a crime of violence under the use-of-physical-force clause. Accordingly, we treat the issue as waived and do not address whether an aggravated assault conviction under the New Jersey statute qualifies as a crime of violence under the use-of-physical-force clause. *See United States v. Castillo-Marin*, 684 F.3d 914, 919 (9th Cir. 2012).

contents of judicially noticeable documents from the New Jersey conviction. Garcia-Jimenez objected to the crime-of-violence enhancement. At sentencing, the United States agreed with the PSR that the 16-level enhancement was warranted, but specifically urged that, under *Esparza-Herrera v. United States*, 557 F.3d 1019 (9th Cir. 2009) (per curiam), Garcia-Jimenez's conviction does categorically qualify as a crime of violence.

The district court considered the PSR as well as judicially noticeable documents submitted by the United States. Relying on that information, and on the parties' arguments, the court added 16 levels to the base offense level for Garcia-Jimenez's reentry offense, thereby exposing him to a Guidelines range of 46-to-57 months. In support of that range, the district court stated, citing *Esparza-Herrera*, that "possibly categorically [the New Jersey conviction] is a crime of violence. We don't even have to do the modified categorical approach."[3] Further explaining the sentence it would impose, the court reasoned that the 46-to-57-month range was "reasonable . . . to satisfy all of the statutory factors of sentencing, including [Garcia-Jimenez's] history and characteristics."

Ultimately, the court sentenced Garcia-Jimenez to 46 months' imprisonment, the low end of the recommended range. The court explained, "the purpose of this sentence is

---

[3] There was some discussion before the district court and in Garcia-Jimenez's briefing on appeal regarding application of the modified categorical approach. On appeal, however, the United States does not argue that the modified categorical approach applies here and expressly abjured reliance on that approach at oral argument. We therefore do not address the modified categorical approach.

to address safety to the community, public safety, and also to send a very clear message to [Garcia-Jimenez], that [he] should not return here ever until [he has] legal permission to travel here."

Without the enhancement, Garcia-Jimenez's adjusted base offense level would have resulted in a Guidelines range of 10-to-16 months. At the conclusion of the sentencing hearing, the court, without specifically noting the range applicable if the conviction were not a crime of violence, stated:

> And I also should make a record that in the event that the Court incorrectly calculated the guidelines and the 16 level enhancement, if for some reason that was – that is incorrect and it's actually treated differently or less seriously under the guidelines, the Court in its discretion would sentence the defendant outside of the advisory guidelines because I think that . . . 46 months is a reasonable sentence no matter . . . whether the aggravated assault is a crime of violence under the advisory guidelines. So the Court would treat it that way in any event and sentence the defendant outside of the guidelines if, in fact, the Court were unable to reach the guideline range of 46 to 57 months due to the nature – due to how the criminal history is treated under the advisory guidelines.

Garcia-Jimenez timely appealed his sentence.

## II.

This court reviews de novo the district court's determination that Garcia-Jimenez's prior conviction constitutes a crime of violence under Guidelines section 2L1.2. *United States v. Marcia-Acosta*, 780 F.3d 1244, 1248 (9th Cir. 2015). As we explained in *Marcia-Acosta*, a case, like this one, involving application of the 16-level section 2L1.2 crime-of-violence enhancement:

> The Federal Sentencing Guidelines generally apply a 16-level sentencing enhancement to a defendant convicted under 8 U.S.C. § 1326 when that defendant previously was deported after a conviction for a crime of violence. U.S.S.G. § 2L1.2(b)(1)(A)(ii). The definition of "crime of violence" includes the crime of "aggravated assault" under state law. *See* U.S.S.G. § 2L1.2, cmt. n.1 (B)(iii). We use the categorical approach set forth in *Taylor v. United States*, 495 U.S. [575, 602 (1990)] to determine whether a defendant's prior conviction constitutes a "crime of violence" for the purposes of U.S.S.G. § 2L1.2(b)(1)(A). When the statute of conviction sweeps more broadly than the generic crime, a conviction under that law cannot categorically count as a qualifying predicate, even if the defendant actually committed the offense in its generic form.

*Id.* (some internal quotation marks, citations, and alterations omitted).

Here, comparing the elements of the New Jersey provision under which Garcia-Jimenez was convicted with the elements of the federal generic definition of aggravated assault, we conclude, for two independent reasons, that the two are not a categorical match. *See Taylor*, 495 U.S. at 602.

A.

New Jersey law punishes an individual for aggravated assault if he "[a]ttempts to cause serious bodily injury to another, or causes such injury purposely or knowingly or under circumstances manifesting extreme indifference to the value of human life recklessly causes such injury . . . ." N.J. Stat. Ann. § 2C:12-1(b)(1). Garcia-Jimenez maintains that this provision is broader than the federal generic definition of aggravated assault, because it punishes conduct committed with a mental state of extreme-indifference recklessness whereas the federal generic definition of aggravated assault requires the defendant to have acted with a more culpable mental state—with knowledge, purpose, or intent, for example.

*Esparza-Herrera* resolved a closely related, yet distinct, issue. *See* 557 F.3d 1019. In that case, the defendant was being sentenced for illegal reentry and had previously been convicted of aggravated assault under Arizona law. *See id.* at 1021. The statute under which the defendant was convicted did not match the federal generic definition of aggravated assault, *Esparza-Herrera* held, because Arizona law punishes as aggravated assault offenses committed with a mens rea of simple recklessness. *Id.* at 1024. Relying principally on the Model Penal Code, *Esparza-Herrera* explained that the federal generic definition of "aggravated assault requires a mens rea of *at least* recklessness 'under circumstances

manifesting extreme indifference to the value of human life.'" *Id.* at 1025 (quoting Model Penal Code §§ 2.02, 2.11.1(a)) (emphasis added).   *Esparza-Herrera* did not hold that extreme-indifference recklessness *is* sufficient to satisfy the federal generic definition of aggravated assault; that question was not presented to the court, and the court did not resolve it.

The United States hangs its hat on *Esparza-Herrera*, contending that the case at least implicitly decided that extreme-indifference recklessness is sufficient to make out federal generic aggravated assault.  But that is just not so.  As noted, the facts of the case did not present the question whether extreme-indifference recklessness is sufficient, and the careful "at least" language confirms that the question was not decided.

Moreover, *Esparza-Herrera* did not conduct the analysis that would have been required to answer the question now before us.  A court applying categorical analysis ordinarily surveys a number of sources—including state statutes, the Model Penal Code, federal law, and criminal law treatises—to establish the federal generic definition of a crime.  *See United States v. Garcia-Santana*, 774 F.3d 528, 534 (9th Cir. 2014).  Most often, "[t]he generic definition of an offense 'roughly corresponds to the definitions of the offense in a majority of the States' criminal codes.'"  *Id.* (quoting *Taylor*, 495 U.S. at 589) (internal alterations omitted).    Yet *Esparza-Herrera* did not survey state aggravated assault statutes to decide whether extreme-indifference recklessness *suffices* for federal generic aggravated assault.  Rather, the survey conducted in that case differentiated only between aggravated assault statutes that require simple recklessness and those that require *any* greater

level of mens rea. *See* 557 F.3d at 1024–25. We cannot assume that *Esparza-Herrera* implicitly decided a question that was not presented *and* as to which it did not conduct the appropriate analysis.[4]

After conducting the proper analysis, we conclude that a mens rea of extreme indifference recklessness is *not* sufficient to meet the federal generic definition of aggravated assault. Thirty-three states and the District of Columbia do not punish as aggravated assaults offenses committed with

---

[4] Subsequent case law has confirmed *Esparza-Herrera*'s holding, without extending it to aggravated assaults committed with extreme indifference recklessness. *See Marcia-Acosta*, 780 F.3d at 1249; *Castillo-Marin*, 684 F.3d at 925; *United States v. Gomez-Hernandez*, 680 F.3d 1171, 1175 (9th Cir. 2012); *United States v. Palomino Garcia*, 606 F.3d 1317, 1331–32, 1334 n.14 (11th Cir. 2010).

One of our cases injects some potentially confusing language on this point. After repeating, citing *Esparza-Herrera*, that federal generic aggravated assault requires "at least" extreme indifference recklessness, *Gomez-Hernandez* states: "Generic aggravated assault requires *only* a heightened extreme indifference form of recklessness." 680 F.3d at 1177 (emphasis added). This paraphrase of the earlier opinion was not material to the outcome in *Gomez-Hernandez*, nor did the case present or analyze the distinction Garcia-Jimenez makes here. (The predicate offense in *Gomez-Hernandez*, attempted aggravated assault under Arizona law, requires intent, *id.* at 1176, a mens rea that indisputably satisfies the federal generic definition.) *Gomez-Hernandez* therefore had no reason to do more than refer to *Esparza-Herrera* as part of a background narrative; an inaccurate paraphrase included while doing so—after an accurate quotation—is certainly not a binding holding. *Cf. Pac. Operators Offshore, LLP v. Valladolid*, 132 S. Ct. 680, 688 (2012) (declining to ascribe the weight of a precedential holding to an "ambiguous comment [] made without analysis in dicta").

only extreme indifference recklessness.[5, 6]   In addition, the

---

[5] A few notes on this survey: First, aggravated assault statutes vary in name, form, and substance, so we have selected the statutes or specific provisions that most closely mirror the aggravated assault provision under which Garcia-Jimenez was convicted.  Second, some state statutes do not explicitly identify the mens rea required to commit the crime, but state case law clarifies the mens rea element.  *See, e.g.*, *State v. Hutchings*, 285 P.3d 1183, 1187 (Utah 2012) (explaining that intent is an element of aggravated assault under Utah law).   Third, two states criminalize "wanton" conduct.  *See State v. Pope*, 414 A.2d 781, 788 (R.I. 1980), *overruled on other grounds as recognized in State v. Gillespie*, 960 A.2d 969, 980 (R.I. 2008); *Commonwealth v. Pease*, 731 N.E.2d 92, 94 (Mass. App. Ct. 2000).  Because the U.S. Supreme Court equates recklessness with wantonness, *Smith v. Wade*, 461 U.S. 30, 39 n.8 (1983), this survey categorizes Rhode Island as a state that punishes *reckless* aggravated assaults; Rhode Island's case law does not define "wanton" to mean something more than recklessness.  By contrast, Massachusetts case law states that an aggravated assault can be committed by "[w]anton and reckless conduct," but equates "wanton and reckless" with "intentional." *See Commonwealth v. McCann*, 178 N.E. 633, 634 (Mass. 1931); *Pease*, 731 N.E.2d at 94.  For that reason, Massachusetts is grouped as a state that requires more than extreme indifference recklessness to make out aggravated assault.   Finally, where a statute permits conviction for reckless conduct, but only within a provision that incorporates a further narrowing element, such as the use of a deadly weapon—so that the provision does not punish the reckless causing of serious bodily injury, without more—the statute is treated as requiring a mens rea of more than extreme indifference recklessness.  *See, e.g.*, Alaska Stat. § 11.41.200 (punishing the reckless use of a dangerous instrument, thereby causing serious physical injury to another, or the reckless causing of serious physical injury to another as a result of repeated assaults using a dangerous instrument, but otherwise punishing only the intentional or knowing causing of serious physical injury); *see also* N.H. Rev. Stat. Ann. § 631.1; Or. Rev. Stat. § 163.175.  We note, however, that even looking at just the mens rea element of state statutes, without considering the existence of a further narrowing element, the majority of state statutes still do not punish aggravated assaults committed with only extreme indifference recklessness.

common law definition of assault, a general intent offense that requires a showing of willfulness, has been incorporated into the federal offense of assault resulting in serious bodily injury, 18 U.S.C. § 113(a)(6). *See United States v. Loera*, 923 F.2d 725, 727–28 (9th Cir. 1991).

Seventeen states and the Model Penal Code do punish aggravated assaults committed with extreme indifference recklessness (or a lesser level of mens rea).[7]

That a substantial majority of U.S. jurisdictions require more than extreme indifference recklessness to commit

---

[6] *See* Alaska Stat. § 11.41.200; Ark. Code Ann. § 5-13-204; Cal. Penal Code § 245; Colo. Rev. Stat. § 18-3-202; D.C. Code § 22-404.01; Fla. Stat. §§ 784.011, 784.021; Ga. Code Ann. §§ 16-5-20, 16-5-21; Haw. Rev. Stat. § 707-710; Idaho Code §§ 18-901, 18-902; Ill. Comp. Stat. 720 / §§ 5.12-1, 5.12-2; Ind. Code § 35-42-2-1.5; Iowa Code §§ 708.1, 708.2; Kan. Stat. Ann. § 21-5412; La. Rev. Stat. Ann. §§ 14:36, 14:37; Md. Code Ann., Crim. Law § 3-202; Mass. Gen. Laws Ann. ch. 265, § 13A; Mich. Comp. Laws Ann. § 750.84; Minn. Stat. §§ 609.02, 609.221; Mo. Rev. Stat. § 565.050; Mont. Code Ann. § 45-5-202; Neb. Rev. Stat. § 28-308; Nev. Rev. Stat. § 200.471; N.H. Rev. Stat. Ann. § 631.1; N.M. Stat. Ann. § 30-3-2; N.C. Gen. Stat. § 14-32.4; N.D. Cent. Code § 12.1-17-02; Ohio Rev. Code Ann. § 2903.12; Okla. Stat. tit. 21, §§ 641, 646; Or. Rev. Stat. § 163.175; Utah Code Ann. § 76-5-103; Va. Code Ann. § 18.2-51.2; Wash. Rev. Code § 9A.36.011; W. Va. Code § 61-2-9; Wis. Stat. § 940.19.

[7] *See* Ala. Code § 13A-6-20; Ariz. Rev. Stat Ann. §§ 13-1203, 1204; Conn. Gen. Stat. § 53a-59; Del. Code Ann. tit. 11, § 613; Ky. Rev. Stat. Ann. § 508.010; Me. Stat. tit. 17-A, § 208; Miss. Code Ann. § 97-3-7; N.J. Stat. Ann. § 2C:12-1(b); N.Y. Penal Law § 120.10; 18 Pa. Cons. Stat. § 2702; R.I. Gen. Laws §§ 11-5-2, 11-5-3; S.C. Code Ann. § 16-3-600; S.D. Codified Laws § 22-18-11; Tenn. Code Ann. §§ 39-13-101, 39-13-102; Tex. Penal Code Ann. §§ 22.01, 22.02; Vt. Stat. Ann. tit. 13, § 1024; Wyo. Stat. Ann. § 6-2-502; Model Penal Code § 211.1(a).

aggravated assault is a compelling indication that the federal generic definition of aggravated assault *also* requires more than that mental state.  *See Estrada-Espinoza v. Mukasey*, 546 F.3d 1147, 1153 (9th Cir. 2008) (en banc), *overruled on other grounds as recognized by United States v. Rivera-Constantino*, 798 F.3d 900, 904 (9th Cir. 2015) (describing 35 states as "the vast majority of states" for the purposes of the *Taylor* analysis); *Esparza-Herrera*, 557 F.3d at 1025 (holding that 33 jurisdictions is a sufficient consensus to establish the federal generic definition of a crime).

The Model Penal Code does point in the opposite direction—unlike in *Estrada-Espinoza* and *Esparza-Herrera*, where the Model Penal Code and the statutory survey results were in harmony.  But as we have emphasized, the Model Penal Code, while a helpful tool in the categorical analysis, does not dictate the federal generic definition of a crime. *United States v. Velasquez-Bosque*, 601 F.3d 955, 961 (9th Cir. 2010); *see also, e.g., United States v. Corona-Sanchez*, 291 F.3d 1201, 1205 (9th Cir. 2002) (en banc), *abrogated on other grounds as recognized by Avila v. Holder*, 454 F. App'x 618, 620 (9th Cir. 2011) (declining to adopt the Model Penal Code definition of an offense where that definition was contrary to the meaning of the offense in most states); *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1142 (9th Cir. 2006) (en banc) (Wardlaw, J., dissenting) (explaining that the majority adopted a federal generic definition of an offense that was contrary to the Model Penal Code).  We also note that at least one treatise confirms that assault, in its various forms, is a general intent crime.[8]  *See* 6 Am. Jur. 2d Assault

---

[8] General intent equates with knowledge.  *United States v. Gracidas-Ulibarry*, 231 F.3d 1188, 1196 (9th Cir. 2000) (en banc).  Accordingly, aggravated assault crimes referred to in this opinion that require general

& Battery § 15 ("The requirement of a general intent to do an act that is inherently dangerous to human life is a general element of assault and battery. . . . Assault is a general intent crime."). The weight of authority—approximately two-thirds of the states, the common law, federal law, and at least one treatise, as compared to the Model Penal Code and one-third of the states—establishes that the federal generic definition of aggravated assault does not incorporate a mens rea of extreme indifference recklessness.

Because the New Jersey provision under which Garcia-Jimenez was convicted punishes conduct committed with only extreme indifference recklessness, the New Jersey definition of aggravated assault is broader than the federal definition. Consequently, the district court should not have applied the crime-of-violence enhancement to Garcia-Jimenez's sentence.

B.

The New Jersey statute of conviction also criminalizes attempts to cause serious bodily injury as aggravated assaults. Thirty-five U.S. jurisdictions do not incorporate attempts directly into their aggravated assault provisions.[9, 10]

---

intent are treated as requiring a mens rea of more than extreme indifference recklessness.

[9] Certain jurisdictions' statutes only incorporate attempts where those attempts are coupled with additional narrowing elements, such as the use of a deadly or dangerous weapon. *See, e.g.*, Ohio Rev. Code Ann. § 2903.12. Such statutes are not treated here as ones that punish attempts as aggravated assaults. Louisiana punishes attempted aggravated *battery*, which differs only in name from attempted aggravated assault. *See* La. Rev. Stat. Ann. §§ 36, 37. Accordingly, we treat Louisiana as a

This survey does not, however, accurately capture the landscape of aggravated assault offenses as they relate to attempts to cause serious bodily injury. Many U.S. jurisdictions have separate attempt statutes that can be combined with the jurisdiction's aggravated assault statute to create attempted aggravated assault. *See, e.g.*, *Schnecker v. State*, 739 P.2d 1310, 1310 (Alaska Ct. App. 1987) (citing Alaska Stat. §§ 11.31.100, 11.41.200); *but see In re James M.*, 9 Cal. 3d 517, 520–23 (1973) (declining to recognize the crime of attempted assault, either simple or aggravated). Because we do not take a "hyper-formalistic approach" to the

---

jurisdiction that punishes attempt within its aggravated assault statute. *See Fernandez-Ruiz*, 466 F.3d at 1125 (explaining that, in applying the categorical approach, the court looks behind the statutory title of a state offense). Finally, the District of Columbia's aggravated assault statute identifies, in a subsection separate from the provision defining the *crime* of aggravated assault, the *sentence* for an attempt to commit aggravated assault. *See* D.C. Code § 22-404.01(c). The statute does not define "aggravated assault," as such, to include attempts to commit serious bodily injury, and so is included in the group of 33 statutes described above. *Id.*

[10] *See* Ala. Code § 13A-6-20; Alaska Stat. § 11.41.200; Ariz. Rev. Stat Ann. §§ 13-1203, 1204; Ark. Code Ann. § 5-13-204; Cal. Penal Code § 245; Colo. Rev. Stat. § 18-3-202; Conn. Gen. Stat. § 53a-59; Del. Code Ann. tit. 11, § 613; D.C. Code § 22-404.01; Fla. Stat. §§ 784.011, 784.021; Haw. Rev. Stat. § 707-710; Ill. Comp. Stat. 720 / §§ 5.12-1, 5.12-2; Ind. Code § 35-42-2-1.5; Iowa Code §§ 708.1, 708.2; Kan. Stat. Ann. § 21-5412; Ky. Rev. Stat. Ann. § 508.010; Me. Stat. tit. 17-A, § 208; Mass. Gen. Laws Ann. ch. 265, § 13A; Mich. Comp. Laws Ann. § 750.84; Minn. Stat. §§ 609.02, 609.221; Mont. Code Ann. § 45-5-202; Neb. Rev. Stat. § 28-308; N.H. Rev. Stat. Ann. § 631.1; N.M. Stat. Ann. § 30-3-2; N.Y. Penal Law § 120.10; N.C. Gen. Stat. § 14-32.4; Or. Rev. Stat. § 163.175; R.I. Gen. Laws §§ 11-5-2, 11-5-3; S.C. Code Ann. § 16-3-600; Tenn. Code Ann. §§ 39-13-101, 39-13-102; Tex. Penal Code Ann. §§ 22.01, 22.02; Va. Code Ann. § 18.2-51.2; Wash. Rev. Code § 9A.36.011; W. Va. Code § 61-2-9; Wis. Stat. § 940.19.

categorical analysis, *Gomez-Hernandez*, 680 F.3d at 1173; *see id.* at 1175–77, and because certain jurisdictions do punish attempts to cause serious bodily injury by combining the jurisdiction's attempt statute with its aggravated assault statute, the distinction between those jurisdictions that incorporate attempts directly into their aggravated assault statutes and those that punish a crime with precisely the same elements is not one of substance.

We need not, however, further belabor the question whether an attempt to cause serious bodily injury is part of the federal generic definition of aggravated assault. Even if it were, the attempt prong of the New Jersey statute is broader than any federal generic definition of attempt.

New Jersey law criminalizes attempts comprised of solely preparatory acts and has specifically rejected the prevalent "probable desistance" test. Federal law does not interpret generic "attempt" so broadly.

In New Jersey, a person is guilty of attempt if the person "[p]urposely does or omits to do anything which, under the circumstances as a reasonable person would believe them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in [the] commission of the crime." *State v. Fornino*, 539 A.2d 301, 303–04 (N.J. Super. Ct. App. Div. 1988) (quoting N.J. Stat. Ann. § 2C:5-1). *Fornino*, which the parties agree is the controlling precedent, discussed extensively the meaning of this language under New Jersey law. *See* 539 A.2d 301.

Facially, New Jersey's substantial-step requirement is identical to the requirement incorporated into the federal generic definition of attempt. *See United States v. Gonzalez-*

*Monterroso*, 745 F.3d 1237, 1243–44 (9th Cir. 2014).  But *Fornino* explains that New Jersey's attempt statute was enacted to broaden the usual scope of attempt, eliminating from the concept of attempt the probable desistance test, 539 A.2d at 304—*i.e.*, any requirement that the "defendant's actions unequivocally demonstrate that the crime will take place unless interrupted by independent circumstances." *Gonzalez-Monterroso*, 745 F.3d at 1243 (internal quotation marks and alteration omitted); *see also id.* at 1244; *United States v. Saavedra-Velazquez*, 578 F.3d 1103, 1107–08, 1109 n.5 (9th Cir. 2009).  The probable desistance test is, however, incorporated into the federal generic definition of attempt. *See Gonzalez-Monterroso*, 745 F.3d at 1243, 1244; *Saavedra-Velasquez*, 578 F.3d at 1107–08, 1109 n.5.[11]

Because New Jersey has explicitly eliminated the probable desistance test, New Jersey's definition of attempt is broader than the federal definition.  On this ground, too, the New Jersey statute of conviction is not a categorical match for the federal generic definition.

Accordingly, we hold that the New Jersey aggravated assault provision pursuant to which Garcia-Jimenez was convicted sweeps more broadly than the federal generic definition, with regard to both the mens rea and attempt elements.  The district court therefore committed procedural error when it concluded that Garcia-Jimenez's prior

---

[11] Relatedly, *Fornino* explicitly interprets "attempt" to include some merely preparatory acts, so long as they are not "very remote preparatory acts." 539 A.2d at 306.  This interpretation appears contrary to the federal generic definition of attempt, which does not include the "[m]ere preparation to commit a crime." *Gonzalez-Monterroso*, 745 F.3d at 1243, 1244.

conviction is a "crime of violence," subjecting him to the 16-level sentencing enhancement under Guidelines section 2L1.2. *See United States v. Carty*, 520 F.3d 984, 991, 993 (9th Cir. 2008) (en banc).

III.

The United States maintains that even if the New Jersey statute is overbroad, the district court's procedural error in calculating the base offense level is harmless in light of the district court's statement that it would have imposed the same sentence even if the Guidelines' 16-level enhancement was inapplicable. The United States has the burden of proving the error harmless. *United States v. Acosta-Chavez*, 727 F.3d 903, 909 (9th Cir. 2013).

Ordinarily, "[a] failure to [calculate the Guidelines range] correctly is reversible error." *Saavedra-Velazquez*, 578 F.3d at 1105 n.1. Further, "a district judge's 'mere statement that it would impose the same above-Guidelines sentence no matter what the correct calculation cannot, without more, insulate the sentence from remand . . . .' '[T]he court must explain, among other things, the reason for the *extent* of [a] variance.'" *Acosta-Chavez*, 727 F.3d at 910 (quoting *United States v. Munoz-Camarena*, 631 F.3d 1028, 1031 (9th Cir. 2011) (per curiam)).

Here, the proper range is 10-to-16 months, not 46-to-57 months. So the district court imposed a sentence that was nearly three times the top of the proper Guidelines range. The explanation requirement has special force when the deviation is as large as it is here.

The district court provided no explanation for this extremely large—albeit hypothetical—deviation from the proper Guidelines range. The United States asserts that the district court did state that it would impose the 46-month sentence even without the enhancement because of Garcia-Jimenez's criminal history. But the passage the United States cites for this proposition almost surely did not mean what the United States would have it mean. Instead, the district court's reference to criminal history was part of its explanation regarding why the Guidelines may treat Garcia-Jimenez's criminal history differently than the court did—that is, that his prior conviction may not be (as we hold it is not) a crime of violence:

> So the Court would treat [Garcia-Jimenez's sentence the same] way in any event and sentence the defendant outside of the guidelines *if, in fact, the Court were unable to reach the guideline range of 46 to 57 months due to the nature – due to how the criminal history is treated under the advisory guidelines*.

(Emphasis added).

In sum, the district court's assurance that it would have imposed a sentence three times the proper Guidelines range if its Guidelines calculation turned out to be wrong cannot, without more, cure the prejudice resulting from its incorrect Guidelines calculation. *See Acosta-Chavez*, 727 F.3d at 909–10; *Munoz-Camarena*, 631 F.3d at 1030–31. Accordingly, we find that the district court committed

reversible procedural error at sentencing, *see Carty*, 520 F.3d at 991, 993, and we must remand for resentencing.[12]

**VACATED AND REMANDED FOR RESENTENCING.**

---

**[12]** Because Garcia-Jimenez's sentence is vacated on the basis of the erroneous application of the sentencing enhancement, we do not address his constitutional challenges to his sentence. *See Lee v. Walters*, 433 F.3d 672, 677 (9th Cir. 2005).